STATE, EX REL., O. S. SPILLMAN, ATTORNEY GENERAL, V.
CITIZENS STATE BANK OF POTTER:
OMAHA NATIONAL BANK, CLAIMANT, APPELLANT:
VAN E. PETERSON, RECEIVER, APPELLEE.

FILED JULY 2, 1928.   No. 25056.

*Smith, Schall, Howell & Sheehan, Warren H. Howard* and *Gaines, Van Orsdell & Gaines,* for appellant, Omaha National Bank.

*O. S. Spillman, Attorney General, C. M. Skiles* and *Roland V. Rodman, contra.*

Heard before GOSS, C. J. ROSE, DEAN, GOOD, THOMPSON, and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an appeal growing out of the failure of the Citizens State Bank of Potter, Nebraska, a receiver for which was appointed February 13, 1924, the Omaha National Bank presenting claims against the depositors' guaranty fund, arising out of three certificates of deposit stated as three separate causes of action. The district court allowed the claims on the first two causes of action as charges against the general assets of the bank, but disallowed them as claims against the guaranty fund, and the bank appeals. The district court allowed the claim of the bank on the third cause of action against the general assets and also against the guaranty fund, and the receiver appeals. The facts (many of which are stipulated and none in serious dispute) of each transaction will be stated

and considered as the first, second and third cause of action, respectively.

First cause of action. November 5, 1923, certificate of deposit No. 1823 was issued by the bank to George A. Roberts in due form, bearing interest at the rate of 5 per cent. for the sum of $3,600. This certificate was the final renewal of No. 1171 issued to Roberts November 15, 1921, for the same amount, and which was based upon the following transactions:

(a) October 25, 1921, the Potter bank was overdrawn at the Merchants National Bank in the sum of $2,050.27, and that bank called Roberts, who was president of the Potter bank and living in the city of Omaha, and Roberts thereupon sent his check for that amount to the Merchants Bank in order that the checks of the Potter bank held by them would not be protested.

(b) At the time No. 1171 was issued the Potter bank was owing Roberts for interest items collected by it upon notes and mortgages belonging to Roberts in their hands the sum of $974.08, for which they had issued to Roberts a deposit slip.

(c) Sometime prior to the issuance of No. 1171 Roberts had paid to the Omaha National Bank for account of the Potter bank the sum of $5,000, all of which had been repaid except the sum of $575.65.

These three items total $3,600, the amount of said certificate.

As to transactions (a) and (c), the letters of Roberts to the Potter bank do not sustain the claim that they were deposits. The following excerpts from the letters clearly stamp the transactions as loans:

October 25, 1921.

"The Merchants National Bank just called me up and said that your bank was overdrawn down there tonight, $2,050.27, and in order to fix the matter so that they would not let the checks go to protest, I am sending them down a check for the above amount. I certainly hope that in some way the bank can get itself in shape so these fellows

don't keep calling me up all the time and asking me to take care of obligations, as above.

"The Citizens State Bank at Potter, confidentially, is getting a bad name here in Omaha on account of these overdrafts and drafts that is made on the bank, and laying around for a week without being paid.

"As you know I am mighty hard up myself and I would like to be one of the first to be reimbursed on this $2,050.27."

` November 3, 1921.

"You are well aware of the load I am carrying for the two banks, and I cannot afford to have these Omaha banks continually writing and calling me up in regard to the way the banks at Potter and Dix are being handled. They must be handled in a business-like way if they are going to be handled at all. * * * Just a few days ago I sent down to the Merchant National Bank $2,050.27. Just last night Mr. Eastman called me up and said there was another overdraft. Now, I am all through sending down checks to these banks, * * * and we might as well have an understanding first as last, as to where we stand."

November 8, 1921.

"Also at one time when I paid the Merchants National Bank $5,000 there was to have been notes sent me covering this payment, but there was a shortage on this account of $575, and after deducting $200 difference on your notes yesterday, still leaves $375 in paper due us. Also on October 25th, I gave the Merchants National Bank a check for $2,050.27 to take up an overdraft that they were kicking about.

"Now I think the way to square this thing up if you haven't got the money is to give me a certificate of deposit for the following amounts: $2,050.27 with interest at 8% up to October 25 until you make out the certificate; $1,174.08 plus debit memorandum, $7.81, which is due me on interest paid and deposited in the bank; and for $375 balance due me on deficit to cover $5,000 which I paid the

Omaha National Bank. This would make a total certificate of deposit of a little over $3,600."

With reference to (a) and (c) claimant argues that the Potter bank received full consideration for this certificate; but the question is whether they were loans or deposits. It cannot be said that they were deposits in the ordinary course of the banking business. At the time the payments were made neither party considered them deposits, and the letters above quoted show beyond dispute that the bank was in financial difficulty and the money was paid by Roberts to aid the bank, he protesting the while. The money was not a voluntary deposit in the bank for the benefit of Roberts, but was apparently forced from him by reason of his interest in the bank as a stockholder and officer. By paying a debt of the bank and taking a certificate of deposit for the amount, a stockholder may not change the debt into a deposit and thus charge the guaranty fund; if so, ordinary debts would be placed upon the same plane as deposits. True, had Roberts in good faith deposited money in the bank and the latter had paid its debt with it, that result might apparently have been accomplished; but if it appeared that such was the purpose of the transaction, it would be considered a loan. Section 8033, Comp. St. 1922, provides:

"No claim to priority shall be allowed which is based upon any evidence of indebtedness in the hands of or originally issued to any stockholder, officer, or employee of such bank, which represents money obtained by such stockholder, officer, or employee from himself or some other person, firm, corporation, or bank in lieu of or for the purpose of effecting a loan of funds to such failed bank."

We think it clearly appears that the purpose of these payments was to assist the bank, and in fact they were loans by an officer and stockholder.

As to transaction (b) the certificate represented money in the bank which had been collected for Roberts on other transactions, was placed to his credit, and instead of drawing it out he accepted a time certificate. This merely

changed the form of the deposit. The facts fulfil all the requisites of a deposit and the amount is payable from the guaranty fund.

Second cause of action. This is based upon certificate No. 1763 issued August 15, 1923, for $3,500, to George A. Roberts, and is the last renewal of No. 1230, dated January 13, 1922, for the same amount, the history of which is as follows: On January 5, 1921, A. R. Roberts, brother of George A., sold to the Potter bank two notes aggregating the full value of $7,000 and received certificate No. 882 for the sum of $7,000. Subsequently this certificate was renewed for the same amount, and later, January 13, 1922, was split into two certificates, Nos. 1229 and 1230, each for $3,500. These were subsequently renewed, one of them by certificate No. 1418, and the other one not being in controversy herein. No. 1418, prior to its maturity, October 13, 1922, was purchased for full value by George A. Roberts and delivered to the Omaha National Bank as collateral security to George's debt to said bank in the sum of about $20,000. When No. 1418 became due the Omaha National Bank sent it to the Potter bank. About the same date George A. Roberts sent to the Potter bank his check on the Omaha bank for $3,500, payable to the Potter bank, and on the same day, October 11, 1922, the Potter bank issued its draft payable to the Omaha National for the full amount of said certificate and interest. On the same date certificate of deposit No. 1487 was issued by the Potter bank to Roberts for $3,500, due January 15, 1923, drawing 5 per cent. interest, which being received by Roberts, he turned the same over to the Omaha National Bank as collateral security in lieu of the previous certificate, No. 1418, and upon the return of the draft, above referred to, the Omaha National Bank turned the money over to Roberts. Certificate No. 1487 was renewed by No. 1585, and that by No. 1763, the same procedure being followed as with No. 1487, No. 1763 being the one upon which claim is made. Upon this state of facts it must be conceded that the original certificate, No. 882, to A. R. Roberts

for $7,000 represented a deposit within the protection of the guaranty fund (*State v. Farmers State Bank*, 113 Neb. 82) ; that the renewals thereof down to and including 1418 also represented deposits. It is stipulated that prior to October 11, 1922, "A. R. Roberts sold for the full value, plus interest, for cash, to George A. Roberts, certificate No. 1418," and that George·delivered the same to Omaha National Bank as security for his debt. Up to this point, then, No. 1418 was within the protection of the act, and if the Potter bank had failed while the Omaha bank held No. 1418, no question could be made as to the priority of its claim.

The receiver contends that the process by which 1418 was renewed by 1487 converted the deposit into a loan; that when Roberts gave his check upon the Omaha bank to enable (let it be assumed) the Potter bank to take up 1418, he thereby made a loan to the Potter bank, for which claimant is now seeking priority. We can not adopt this view. While the procedure was unusual, it must be remembered that the $3,500 represented by Robert's check simply went around in a circle returning to him; it is not this $3,500 which is the basis of 1418, but one-half the $7,000 covered by 882. No. 1487 was in effect a renewal of 1418; as the cashier of the Potter bank testified, "One took the place of the other." Suppose Roberts had taken the·cash to the Potter bank and laid it on the counter with 1418, requesting a renewal, and upon receipt of 1487 had taken the money and departed, had he made a loan to the bank? Whatever may have been the purpose of the circuitous method adopted, it did not result in a loan. The result is the same as if the bank had sent the renewal direct to the holder without the intervention of the check and draft. The transaction simply amounted to a renewal; the situation of the parties was not changed, the debt remained the same except as to maturity; the liability of the guaranty fund was not increased. We think the claim is properly chargeable to the fund; and the district court erred in not so holding.

Third cause of action. The Omaha National Bank, prior to October 25, 1923, had loaned certain sums of money to the Potter bank and had taken certain securities as collateral, which included three notes, namely, Emil Cords $2,000, due May 27, 1923, C. F. Prehm $1,400, due November 17, 1923, and George A. Colter $650, due November 6, 1923, total $4,050. These notes were sent to the Potter bank for collection and were collected, but remittance therefor was never made to the Omaha National, the proceeds being placed with the other cash of the bank. It appears that, at the time the guaranty fund commission took charge of the Potter bank, the same had an overdraft of $2,185, but that the general assets of the bank which came into the hands of the receiver were in excess of $50,000. It is stipulated that the assets of the bank were increased by the amount of these collections. There is no attempt to trace these funds into any specific property or specific fund other than the general assets before the closing of the bank; nor is there any direct evidence that the trust property was included in those assets which came into the hands of the receiver.

The sole question then is: Where trust funds have contributed to the general assets of a failed bank in such manner that such assets have been augmented thereby to the extent of such funds, will the latter be declared a prior lien upon the assets of such failed bank in the hands of a receiver subsequently appointed, without a showing that the trust funds or their product were a part of a such last-named assets? The history and development of the principles governing the priority of lien of trust funds in the distribution of insolvent estates has been so fully discussed in a number of cases by this court that we will not enter upon a restatement of them at this time, but refer the student to *City of Lincoln v. Morrison*, 64 Neb. 822, and the very recent case of *Central Nat. Bank v. First Nat. Bank*, 115 Neb. 444, concurring opinion of Eberly, J., 115 Neb. 457, also dissenting opinion of Rose, J., 115 Neb. 451, and opinion on rehearing 115 Neb. 472, and dissenting opinion

115 Neb. 478. The facts in this last case were as follows: The insolvent bank received from plaintiff bank for collection and remittance two notes, the makers of which were depositors of the insolvent bank with sufficient funds respectively to pay the notes in question. The insolvent bank charged their accounts with the amounts due upon the notes and, instead of remitting to plaintiff bank, without consent or knowledge of the latter, credited the amount so charged to its account. The cash which came into the hands of the receiver was insufficient to pay plaintiff's claim and was paid out on other preferred claims, but the general assets of the insolvent bank were sufficient to pay plaintiff's claim and about 40 per cent. of all claims. The questions upon which the court divided were (1) whether or not the general assets of the insolvent bank had been augmented by the transaction above detailed, one division taking the view that the reduction of liabilities, by charging the depositor's accounts, automatically produced a corresponding increase of assets, and the other maintaining that the actual assets for distribution to creditors remained stationary; and (2) whether it was necessary to trace the trust fund into some specific fund or property, or whether it was sufficient to trace it into the general mass of assets. In the instant case the stipulation of the parties and the facts themselves show that the estate of the insolvent was augmented by the trust property at the time the collection was made, and that the assets taken over by the receiver were in excess of $50,000. It should, however, be noted that it is not stipulated that the assets taken over by the receiver were increased by the amount of the trust fund, or any other amount; and the evidence fails to show that to be the fact. The most the evidence shows is that the fund went into the general assets of the bank, was commingled therewith and used in the conduct of the banking business, in the course of which all the cash was dissipated and an overdraft existed of $2,185. The bank was closed December 15, 1923, and the evidence does not disclose that the particular assets of the bank at the time these collections were

made were the same as those taken by the banking department or the receiver. The fact seems to be that they were changing from day to day while the bank remained open.

It has been held that, where the trust consists of money which has been commingled with the money of the trustee so that it cannot be identified, the trust fund is a charge upon the mass so long as it remains, and may be followed and claimed. *City of Lincoln v. Morrison*, 64 Neb. 822. But if the whole of such fund or a greater portion thereof than that representing the trustee's own money is used by an insolvent trustee in paying his debts, *cestui que trust* is not entitled to a preference over general creditors for the amount of his money so lost. In that case a portion of the trust money was traced into certain warrants which came into the hands of the receiver, and a preference was allowed as to the proceeds and profits upon their sale, to the extent that the trust fund had been used in their purchase, but denied as to the other assets.

A similar result was reached in *State v. Bank of Commerce*, 54 Neb. 725, where priority was declared as to the cash but not the general assets.

The claimant cites *Capital Nat. Bank v. Coldwater Nat. Bank*, 49 Neb. 786, *State v. Midland State Bank*, 52 Neb. 1, and *State v. State Bank of Wahoo*, 42 Neb. 896, as sustaining the view that priority may be declared upon the general assets of the trustee when it is shown that they have been augmented by the trust funds. In the *Capital National Bank* case, however, the cash taken over by the receiver exceeded the trust fund, and the presumption was that the latter was included in the cash. The same condition existed in the *Midland State Bank* case as shown by the record (*State v. State Bank of Commerce*, 54 Neb. 725, at page 732) though not by the opinion. These two cases go no further than to declare a preference upon a particular fund in the hands of the receiver, to which the trust funds were traced. *State v. State Bank of Wahoo*, 42 Neb. 896, is authority for claimant, but with reference to this case Ragan, C., who wrote the opinion,

and who also wrote the opinion in *State v. Bank of Commerce, supra,* has this to say on page 732:

"The opinion does not disclose whether the cash in the vaults at the time of its failure was equal to or exceeded the amount of the trust fund; * * * but it was never the writer's intention to hold that the beneficiary of a trust fund, simply because of the character of that fund, was entitled to a preference out of the estate of the insolvent trustee, and the case is not to be regarded as an authority for that doctrine."

The three cases just referred to were disapproved in *City of Lincoln v. Morrison,* 64 Neb. 822, *supra,* the court saying (page 825) : "We think it expedient to state plainly that this court no longer adheres to the extreme view as to the right of *cestui que trust* to be preferred on insolvency of the trustee, expressed in the cases of (naming them), but adheres to the position taken in *State v. Bank of Commerce,* 54 Neb. 725, and *Morrison v. Lincoln Savings Bank & Safe Deposit Co.,* 57 Neb. 225." This last case involved the conversion by trustee of some warrants, but the evidence failed to show "that anything of value derived from the conversion of the warrants ever went into, or formed part of, the assets of the bank, and thus, directly or indirectly, increased the fund in the hands of the receiver for distribution."

It seems clear from a study of the decisions in this state subsequent to *State v. Midland State Bank,* 52 Neb. 1, that, before priority could be declared against the general assets of the trustee, it must be shown that assets of the particular character of the trust property, *e. g.* cash, are included in the general assets, or that specific property therein had been purchased with the trust funds, and priority was restricted to the cash or property so identified. This is in accord with the weight of the recent decisions.

To summarize the facts of this case relating to this particular question: The Potter bank collected the notes in question in cash and mingled it with the general assets; the bank continued transacting business until December

15, 1923, when it was taken over by the state banking department; at that time its cash was overdrawn $2,185; February 13, 1924, a receiver was appointed; no cash was turned over to the receiver, but other assets in excess of $50,000 came to his hands; none of such assets are shown to have been produced by the trust funds; the trust fund, as cash, had been dissipated before the bank closed; the assets in hands of receiver are no greater than they would have been had the Potter bank paid claimant the amount collected on the notes.

If this is the true position, the claim in question is not entitled to priority, under *State v. Bank of Commerce, supra, City of Lincoln v. Morrison, supra,* and *Morrison v. Lincoln Savings Bank & Safe Deposit Co., supra.* The notes were collected in cash, the bank continued in business until taken over, and no cash came into the receiver's hands, and the cash is not traced into any other property. No other conclusion is logically possible than that the trust fund has been dissipated.

Claimant offered in evidence two letters from the guaranty fund commission as admissions that it had a preferred claim against the fund. These were properly excluded by the district court. Claims against the fund cannot be established by admissions of officers in charge thereof, but only by bringing them within the conditions of the statute.

We have not overlooked the fact that the answer of the receiver is a general denial that any sum is due from the guaranty fund, which latter is a mere conclusion, but we are not thereby precluded from declaring the law applicable to the facts of record, evidence of which was received without objection and by stipulation of the parties.

The district court allowed the claim under the third cause of action as a preferred claim payable from the guaranty fund, upon the theory that it was a deposit. This was error. The relation of banker and depositor can only be created by contract, express or implied. The Omaha National Bank never consented that the proceeds of

the note be deposited in the Potter bank, and it does not appear that they were ever so treated by the latter.

We conclude from the above: (1) That the judgment of the district court disallowing the claim under the first cause of action as a charge against the depositors' guaranty fund be reversed and cause remanded, with instructions to allow the same in the sum of $974.08, with interest at 5 per cent. from November 5, 1923, to February 13, 1924; (2) that said judgment as to the second cause of action be reversed in so far as it denies priority to said claim and cause remanded, with instructions to allow the same against the depositors' guaranty fund in the sum of $3,500 with interest at 5 per cent. from August 13, 1923, to February 13, 1924; (3) that said judgment be reversed as to the third cause of action in so far as it allows said claim as a charge against the depositors' guaranty fund; (4) in all other respects said judgment is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.

GOSS, C. J., and DEAN, J., dissent as to the third cause of action.

ROSE, J., dissents.