MIA U. GERING, COUNTY TREASURER, APPELLEE, V. FRED BUERSTETTA, RECEIVER OF FIRST NATIONAL BANK OF PLATTSMOUTH, ET AL., APPELLANTS: UNITED STATES FIDELITY & GUARANTY COMPANY ET AL., APPELLEES.

FILED FEBRUARY 16, 1929. No. 26248.

*A. L. Tidd* and *Blackburn & King*, for appellants.

*Kennedy, Holland, De Lacy & McLaughlin, W. A. Robertson, D. O. Dwyer, W. G. Kieck* and *Sidney W. Smith, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

EBERLY, J.

This is an appeal separately prosecuted by the receiver of the First National Bank of Plattsmouth, an insolvent institution, and George O. Dovey, former cashier thereof, from a decree entered in a proceeding in equity in the district court for Cass county, awarding certain preferences to the county of Cass and others, all of whom will be hereafter referred to as claimants, to the extent of $10,882.19, as to certain assets of that institution, and further adjudging the defendant George O. Dovey personally liable for that amount.

In this trial *de novo* the preponderating evidence in the record fairly establishes the following facts: That on the 2d day of December, 1926, and continuously thereafter, the First National Bank of Plattsmouth, though still open and transacting business, was an insolvent institution and was known to be such by its officers in charge. The evidence indicates that this insolvency was of such degree that its general creditors will not now receive more than 35 cents on the dollar. This bank was a county depository of Cass county, properly designated as such, and had given a bond as required by the Nebraska statute in the sum of $20,000 only. That at the close of business December 1, 1926, there was a balance of public funds deposited in this institution of $17,040.67. On December 2, 1926, there was received by the First National Bank of Plattsmouth from the county treasurer of Cass county a deposit of public moneys in the sum of $25,712.34, which on said date was credited to the account of Cass county, and that the total amount of the public money on deposit in that institution, after such credit, was the sum of $42,753.01. Of this amount, $22,-753.01 was in excess of the statutory bond in force given to secure the deposits of public moneys. The conclusion follows: Such part of that deposit in excess of the $20,000 bond then in force was not only unauthorized and illegal, but was necessarily made and received in express contravention of the provisions of the statutes of Nebraska. *Dovey v. State*, 116 Neb. 533. A part of the deposit thus made by the county treasurer on the 2d day of December, 1926, was a certain check drawn by the Missouri Pacific Railroad Company for the sum of $24,663.68, payable to the county treasurer of Cass county, in satisfaction of taxes, and duly indorsed and deposited by such county treasurer as part of the deposit already referred to. This Missouri Pacific check, which forms the sole basis of the present action, after it had been deposited, was on the same date delivered by the First National Bank of Plattsmouth to, and deposited with, the Omaha National Bank, its correspondent at Omaha, Nebraska, and by the latter institution, on that date, en-

tered as a credit in favor of the First National Bank of Plattsmouth.

According to the account of the First National Bank of Plattsmouth with the Omaha National Bank, as disclosed by the ledger of the latter institution, at the time this deposit was received, there was an apparent balance to the credit of the First National Bank of Plattsmouth $1,878.82, which had been carried forward from the preceding day, and that $1,331.80 additional deposits were also made on December 2. The record further indicates that as part of the transaction, and, indeed, contemporaneous with the receipt by the Omaha National Bank of this Missouri Pacific check, $7,000 was by the direction of the First National Bank of Plattsmouth transferred by the Omaha National Bank to the Federal Reserve Bank at Omaha and placed by that institution to the credit of the First National Bank of Plattsmouth; that a corresponding charge was made by the Omaha National Bank against the First National Bank of Plattsmouth. It also appears that just prior to the recepion of this transfer by the Federal Reserve Bank (Omaha) the First National Bank of Plattsmouth had with it an apparent credit balance as shown by its ledger of $410.46.

It is also a conceded principle of law that where a national bank, being insolvent, received a deposit with knowledge that it cannot pay its debts and must fail in business, the depositor may rescind for fraud and reclaim the deposit or its proceeds out of funds, if traced into specific assets of such insolvent bank, which come into the hands of the receiver. *Brennan v. Tillinghast,* 201 Fed. 609.

It is also well established that, where public funds deposited by a county treasurer without authority of law and in express violation of its inhibitions are received by a national bank with full knowledge of the facts, they constitute a trust fund and can be recovered as such. *State v. Bank of Commerce,* 54 Neb. 725; *Allen v. United States,* 285 Fed. 678; *United States Nat. Bank v. City of Centralia,* 240 Fed. 93; *Empire State Surety Co. v. Carroll County,*

194 Fed. 593; *American Surety Co. v. Jackson*, 24 Fed. (2d) 768.

It follows that the $24,663.68 check and its proceeds, when collected, because of the facts surrounding its receipt by the First National Bank of Plattsmouth, was in truth and in fact trust funds in the technical sense of that term, and that the claimants, as the parties entitled thereto, were entitled to disaffirm the transaction and recover the same from the receiver so far as capable of identification. It appears that the transaction was in fact properly disaffirmed, and the suit to recover the funds as trust funds was commenced by claimants on the 13th of December, 1926; that this bank finally "closed its doors" on the 14th of that month, and that the receiver who was thereafter appointed by the United States comptroller of currency took possession of its assets as of that date. The conclusion is: (1) That the physical facts of the transaction disclose that the trust funds were on the 2d day of December, 1926, wholly within the possession of the Omaha National Bank and the Federal Reserve Bank (Omaha) and constituted a part of the credits of the First National Bank in such institutions; that this possession of such funds on the part of the institutions last named was at all times in good faith and in ignorance of their trust character; and that at no time was any knowledge or notice of the trust character of the fund brought home to either of the same; that the making of the deposit in suit with the First National Bank of Plattsmouth was not disaffirmed in whole or in part, and no demand was made upon the defendant or his predecessors for return of the railway check or its proceeds until December 13, 1926; and that the right of preference to which the claimants are entitled must be determined, as questions of fact, solely by their ability to affirmatively establish and identify such funds either as remaining in possession of the Omaha National Bank or of the Federal Reserve Bank (Omaha); or by tracing the same therefrom into specific assets in a manner in accord with the equitable doctrine of tracing funds, as applied to insolvent national banks. *Schuyler v. Little-*

*field,* 232 U. S. 707; *Central Nat. Bank of Lincoln v. First Nat. Bank of Gering,* 117 Neb. 161; *Dudley v. Richards,* 18 Fed. (2d) 876; *Marvin v. Martin,* 20 Fed. (2d) 746; *People's Nat. Bank v. Moore,* 25 Fed. (2d) 599; *Farmers Nat. Bank v. Pribble,* 15 Fed. (2d) 175; *State v. Citizens State Bank,* 117 Neb. 358.

■ Prior to receipt of these trust funds by the First National Bank of Plattsmouth and their transmissal to the Omaha National Bank, on the 2d day of December, there were existing credit balances, in favor of the First National Bank of Plattsmouth, on the day it "closed its doors" as follows: Chemical National Bank of New York, $822.85; and, in the First National Bank of Chicago, $336.34. It is not shown that any of the proceeds of the county tax check heretofore referred to entered into or became a part of either of these credits. Indeed, it affirmatively appears that as to these amounts they remain wholly unaffected by the transaction. The rule is, it seems, that a credit of a banking institution with a correspondent bank is, at least so far as the present question is concerned, to be treated as a separate and distinct item of property. To sustain preferences therein and thereto, it is necessary to trace the specific trust funds involved, or their proceeds to, and identify the same as being a part of such credit. This, the record discloses, claimants wholly failed to do; in fact, the evidence sustains the inference that neither of these credits was in any manner affected or augmented by the transaction which forms the basis of this investigation. Claimants were therefore entitled to no preference as to either of these amounts. *Titlow v. McCormick,* 236 Fed. 209; *Empire State Surety Co. v. Carroll County,* 194 Fed. 593; *Board of Commissioners v. Patterson,* 149 Fed. 229; *State Bank of Winfield v. Alva Security Bank,* 232 Fed. 847.

■ On December 14, after receipt of notice of insolvency of the First National Bank of Plattsmouth, the Omaha National Bank ceased to honor the drafts of the former institution and, on the appointment of the receiver by the United States comptroller of the currency, paid over to that

officer the sum of $2,899.59, the balance of the credit remaining on its books at the time that notice of the insolvency of the First National Bank of Plattsmouth was by it received. To this sum claimants now assert a claim of preference. For the purpose of this discussion only, it will be conceded that after the deposit of the tax check on December 2, 1926, and the transfer of $7,000 to the Federal Reserve Bank (Omaha), the balance of $18,376.55 which then appeared at the close of that day's business as a credit of the First National Bank of Plattsmouth was made up wholly of trust funds, and that no funds of any other character formed any part of it. The records, however, further disclose that, in the ordinary course of business thereafter, further deposits were from time to time duly made to the credit of the First National Bank of Plattsmouth in the Omaha National Bank and there were also likewise daily withdrawals therefrom; that, as a result of these transactions at the close of business on December 13, this balance had been reduced to a credit balance of $126.94. On the next day by reason of the excess of deposits over withdrawal, which were in no way connected, by the evidence, with the trust funds under consideration, but which were received and credited by the Omaha National Bank, the net balance at the time the course of business was interrupted by notice of insolvency of the First National Bank of Plattsmouth, had increased to a credit of $2,899.59.

The situation presented is such that renders the language made use of by Lurton, Circuit Judge (afterwards associate justice of the supreme court of the United States), peculiarly applicable:

"If trust moneys be wrongfully invested in bonds, or stocks or realty, or promissory notes or bills, and the particular property into which the trust fund has been changed can be ascertained, the owner may take the property and ratify the investment. Or, if the trust funds, along with the property of the trustee or bailee, be invested in an ascertained property, equity will follow the trust fund, not by taking the entire property, for that would be unjust, but

by fastening a charge upon the property to the extent of the trust fund therein discovered. The blending of the trust money with the money of the trustee was suffered at one time to defeat the owner's title and compel him to stand as a mere unsecured creditor. This was upon the idea that money was not earmarked, and, therefore, could not be recovered in specie. But the latter cases have met this difficulty in the case of blended moneys in a bank account, from which there have been drawings from time to time, by the fiction that the sums thus drawn out were from the moneys which the tort-feasor had a right to expend in his own business, and that the balance which remained included the trust fund which he had no right to use. It was upon this fiction that *Knatchbull v. Hallett,* 13 Ch. Div. (Eng.) 696, 726, *et seq.,* was decided. That case was approved in *National Bank v. Insurance Company,* 104 U. S. 54, and has been followed in many subsequent cases when the trust fund has consisted of moneys on deposit. *Smith v. Mottley,* 150 Fed. 266. But as this is a mere presumption it will not stand against evidence. It is, therefore, a part of the rule applicable to following misappropriated moneys into a bank account that, if at any time during currency of the mingled account the drawings out had left a balance less than the trust money, the trust money must be regarded as dissipated except as to this balance, the sums subsequently added to the account from other sources not being attributed to the trust fund. * * * *Beard v. Independent District,* 88 Fed. 375; *Boone County Bank v. Latimer,* 67 Fed. 27; *Spokane County v. First Nat. Bank,* 68 Fed. 979. This side of the rule is peculiarly sound when it is sought to obtain an advantage in the distribution of the assets of an insolvent national bank." *Board of Commissioners v. Strawn,* 157 Fed. 49, 51.

This court in principle approved the rule thus announced in *State v. Bank of Commerce,* 54 Neb. 725, *Morrison v. Lincoln Savings Bank & Safe Deposit Co.,* 57 Neb. 225, and *City of Lincoln v. Morrison,* 64 Neb. 822.

It follows, therefore, that claimants as to the deposit in the Omaha National Bank are limited, so far as preference is concerned, to the sum of $126.94.

▉ The next contention is one which relates to the $7,000 paid to the Federal Reserve Bank (Omaha) and alleged to be applied on a debt of the First National Bank of Plattsmouth secured by collateral, and said collateral, by reason of said payment, was increased for the benefit of said National Bank in the sum of $7,000.

The bill of exceptions contains defendant's exhibit 19, which is a copy of the ledger sheet of the Omaha National Bank containing the account of the First National Bank of Plattsmouth, which was admitted in evidence for and in lieu of the original. It discloses that at the close of business on December 1, 1926, the First National Bank of Plattsmouth had a credit balance of $1,878.82. On the following day there was credited to this account the following sums entered in the order named, viz., $331.57, $1,000.23, $25,211.18. This makes a total deposit for the day of $26,542.98, and adding thereto the credit balance on hand at the opening of the day's business would disclose a total of $28,421.80. It is to be remembered in this connection that the tax check of $24,663.68 constitutes a part of the deposit of $25,211.18 and was received by the Omaha National Bank "too late for clearing house" but was "credited subject to payment."

The first charge entered in this connection on the 2d of December was under the heading "debit amounts" and is a transfer of $7,000, which refers to the transfer to the Federal Reserve Bank (Omaha) of that amount. Following this are entries of charges covering drafts paid, etc., aggregating $2,045.15. Under this record, which together with "deposit slips," original memoranda and "cash letters" really constitute the sole evidence of the transactions, how much of the $7,000 thus transferred to the Federal Reserve Bank (Omaha) constitutes trust funds at the time of such transfer? It is to be remembered that the burden of proof in tracing these funds, by the very nature of the case, is

imposed upon claimants. The undisputed evidence in this record before us is that "the charges and credits and debits made in this account" were made "at or near the time of the transactions represented therein" and "were true and correct entries." It may also fairly be gathered from the evidence and surrounding circumstances, as reflected therein, that the transfer of the $7,000 to the Federal Reserve Bank (Omaha) was contemporaneous with the receipt of the "credits" which included the tax check by the Omaha National Bank and which was admittedly after "clearing" on that day. In view of this situation, we draw the conclusion that, at the time the transfer of the $7,000 which was credited by the Federal Reserve Bank (Omaha) on December 2d, there was an existing credit of the First National Bank of Plattsmouth with the Omaha National Bank, which aggregated $28,421.80, and of which $24,663.68 were trust funds and $3,758.12 were funds not of that character.

Assuming that, in the absence of explicit evidence to the contrary, the rule heretofore quoted, as stated by Justice Lurton, would be applicable to the situation presented, it would follow that on December 2, 1926, of the $7,410.46 then in possession of the Federal Reserve Bank (Omaha) but $3,241.11 were "trust funds."

It is to be noted in this connection that the Federal Reserve Bank is a creature of federal statutes and designed to accomplish and perform a governmental function. For this purpose it is vested with rights and on it are imposed certain duties. Upon the indorsement by its member banks, "which shall be deemed a waiver of payment, notice and protest," it may discount promissory notes, etc., possessing certain qualities. The effect of such indorsement under the act of its creation is to relieve the obligation thus indorsed of the usual conditions, so that the indorsement becomes the absolute and distinct obligation on part of the member bank rediscounting and indorsing the same to pay such note upon maturity date thereof. *Federal Reserve Bank v. First Nat. Bank,* 277 Fed. 300. Upon the maturity of such discounts they became, therefore, a proper

charge against any credit which may be in the possession of such Federal Reserve Bank. Also, under the circumstances existing in the instant case, the First National Bank of Plattsmouth was required to establish and maintain under the terms of this federal statute with the Federal Reserve Bank (Omaha) "an actual net balance" of not less than 7 per cent. of the aggregate amount of its demand deposits and 3 per cent. of its time deposits. The provisions of this federal statute permitted these balances to be checked against under the penalties prescribed therein, but only "for the purpose of meeting existing liabilities," and provided, further, that no member bank should, in event of its failure to comply with these requirements at any time, make new loans until the "total balance" required by law was fully restored. It will be noted that within the provisions of the reserve law member banks must have an "actual net balance" in the possession of their Federal Reserve Bank. "Net" in this connection means that all proper charges and reductions have been made from the account, and "actual" excludes what is merely fictitious. *Pascagoula Nat. Bank v. Federal Reserve Bank,* 3 Fed. (2d) 465.

The record discloses without dispute that at no time between the 2d day of December and the 14th day of that month, both inclusive, or thereafter, did the First National Bank of Plattsmouth possess sufficient deposit to meet these statutory requirements. It was therefore subject to the penalty prescribed by law for failure to maintain a reserve, and during the continuance of this condition, while the amount of its deposit with the Federal Reserve Bank (Omaha) could be lawfully checked against only in satisfaction of existing liabilities, it was not only wholly unauthorized but expressly denied the right to make any new loans. While the term "existing liabilities" is one of large and comprehensive significance, yet the requirements of the creation and maintenance of this lawful reserve and the statutory restrictions upon its use, it must be conceded, were intended for the benefit of the general depositors and general creditors of the member institution and evidence

an important public policy. Trust rights cannot be enforced against one who has acquired legal, that is common-law, ownership, *bona fide*, for value, and without notice of the existence of those trust rights. Whether, in view of the nature of the public duties involved and the intended beneficiaries of the same, the receipt by the Federal Reserve Bank (Omaha) of the moneys in suit, in good faith, as the property of its member bank, in the usual course of business, and without knowledge of its trust character, and as a part of the statutory "actual net balance," impressed a public trust thereon superior to the equities herein claimed, and first asserted after "insolvency" of the member bank had been discovered, query.

We will assume, however, for the purpose of this case, in view of the fact that the question suggested is essentially a federal question, and is not presented in the briefs, that "credit" in the Federal Reserve Bank (Omaha) is to be treated exactly as a credit in any other correspondent bank would be.

On this basis an examination of this account discloses the following: On December 2, $3,000 of this credit under the provisions of law embraced in the federal statute referred to was applied on a Wescott & Sons' note of that amount, leaving a credit balance of $4,407.83; on the day following, December 3, $1,300 of said credit was applied on a M. H. Peterson note, and a further charge of $600 was made which is wholly unexplained in the evidence; on December 10 at the opening of business the net credit balance shown in the account was $2,507.83. On that date $1,-189.87 was deposited to the credit of the First National Bank of Plattsmouth, being the proceeds of a customer's note owned by it and discounted with the Federal Reserve Bank (Omaha), and $3,500 of this amount thus constituted was on that day applied by the Reserve Bank on the A. G. Bach note of $3,500. These notes, it is to be remembered, were customers' notes of the First National Bank of Plattsmouth which had been discounted by it with the Federal Reserve Bank (Omaha) under the terms of the statute al-

ready referred to. The transactions just chronicled with reference to the satisfaction of matured discounts by charging the same to this account were, in fact, but the exercise by the Federal Reserve Bank (Omaha) of implied and express statutory powers and involved the disposition in a manner intended by the national banking act of a fund in its lawful possession held by it as an "actual net balance" of which but $3,241.11 was actually derived from the proceeds of the railway tax check.

At the conclusion of these transactions just referred to the credit balance on hand in the Federal Reserve Bank (Omaha) was but $197.32. This, as the "low balance" which is admitted was in existence prior to the date the receiver took possession of his trust, under the rule heretofore quoted, must be deemed "trust funds" to which claimants are entitled as a specific item of property in which such funds have been affirmatively identified. This leaves of the trust funds originally forming a part of the credit of the Federal Reserve Bank (Omaha), to be yet accounted for or identified, the sum of $3,143.79. Except as it may be affirmatively traced into specific assets, it will be considered as dissipated.

However, when on December 2 the Wescott & Sons' note of $3,000 was charged to this account of the Federal Reserve Bank (Omaha) the balance then remaining was $4,407.83. The presumption, in the absence of evidence, is "that the balance which remained included the trust fund which it had no right to use." Therefore, the claimants were not entitled to preference as to this Wescott & Sons' note or the proceeds thereof.

As to the $1,300 note of M. H. Peterson also charged to this account, conceding that trust funds were traced to it, it also affirmatively appears that neither this note nor the proceeds thereof reached the possession of the receiver. It was wholly satisfied by the check of M. H. Peterson, dated "12-4-1926," drawn on and delivered to the First National Bank of Plattsmouth. This, therefore, affords no basis of preference.

The A. G. Bach note of $3,500 presents a different situation. The evidence fairly discloses that from December 3 to December 10 the credit balance in this account was $2,507.83. On December 10 the proceeds of a note discounted by the First National Bank with the Federal Reserve Bank in the sum of $1,189.87 was entered as a credit in this account, and on the same day the A. G. Bach note of $3,500 was entered as a charge against the credit thus created. The Bach note was· renewed on December 11 by execution of a renewal note of $1,000 and also of a renewal note of $2,500. The note of $1,000, the defendant receiver admits, was sold by the First National Bank of Plattsmouth on December 13, and that the proceeds of such sale entered into and formed a part of the cash of the First National Bank of Plattsmouth which came into his possession on the day following. The receiver concedes that the amount of this cash on hand when the bank closed its doors, $1,181.47, constitutes "trust funds." The $2,500 renewal note, however, was by the First National Bank of Plattsmouth transmitted to the·Federal Reserve Bank (Omaha) as collateral security for a loan of $4,000 evidenced by its promissory note. This collateral note was wholly satisfied and paid as follows: In part by offsetting it against Bach's checking account in the First National· Bank of Plattsmouth to the extent of $1,485, and also in part by the payment by Bach of the sum of $1,015, which was made to the agent of the Federal Reserve Bank of Kansas City, at a date subsequent to the appointment and qualification of the receiver of the Plattsmouth bank, and after such receiver had taken possession of his trust, and entered upon the performance of his duties. Under the circumstances thus disclosed by the record we are inclined to the belief that, for this sum of $1,015, the claimants are also entitled to a preference.

The claimants also assert a preference in certain collateral held by the State Bank of Plattsmouth. The evidence discloses that on November 22 the First National Bank of Plattsmouth borrowed $12,000 of the State Bank of Plattsmouth. It executed and delivered its promissory

note for that amount to the State Bank. It also delivered therewith 33 of its bills receivable aggregating approximately $16,000 as security for the same. Ten days later the First National Bank of Plattsmouth redeemed five of these collateral notes aggregating $2,200 by use of draft No. 129415 for $2,000 drawn by it on the Omaha National Bank.

Conceding, for the purpose of this discussion only, that the $2,000 draft was ultimately paid by trust funds when it arrived at the Omaha National Bank, the effect of the evidence concerning the transaction is to trace the $2,000 draft into and identify the same in the five collateral notes thus redeemed. But it also appears that these five collateral notes were used by the First National Bank of Plattsmouth exclusively through the medium of its depositors' checks to satisfy and pay the lawful demands of its depositors, in the usual course of business while it was still a going, though insolvent, concern. But no specific asset or property of the insolvent bank which came into possession of the receiver was thereby in any manner augmented or its value increased. These transactions, therefore, can. afford no grounds for preference.

The claimants also assert a right of preference based on $1,750 in cash received by the First National Bank of Plattsmouth from the local postmaster in payment of certain drafts which it is claimed were satisfied by trust funds in the possession of the Omaha National Bank.

The facts in these transactions, as disclosed by the record, appear to be as follows: On December 4 a draft, No. 129423, for $350 drawn on the Omaha National Bank was issued for cash. It is disclosed, however, that draft No. 129423 was paid by the Omaha National Bank December 6. On that date the credit balance of the First National Bank of Plattsmouth with that institution carried forward from the preceding day was $6,710.93. On that day four items of deposit were credited to this account aggregating $2,376.63. Nine items, including the $350 draft in question, appear as charges therein. The remaining new credit

balance at the close of the day's business in favor of the First National Bank of Plattsmouth was $6,120.16.

No evidence appears in the record as to the relative order in which the business represented by several items shown in the account was on this day transacted by the Omaha National Bank.

On December 7 the local postmaster again purchased draft No. 129447 for $550, as before drawn on the Omaha National Bank, paying therefor in cash. The record discloses that draft No. 129447 was paid by the Omaha National Bank on December 8 following, and it also appears that at the commencement of business on the 8th the credit balance in that institution in this account was $4,716.05; that during the day two items of deposit were credited to this account as cash, aggregating $1,286.57. The withdrawals charged against the same, including draft No. 129447 aggregated $4,240.10, and no information appears with reference to the relative order in which the transactions recorded occurred.

On December 11 in a similar manner the local postmaster purchased draft No. 129464 for $350 which was paid by the drawee bank and properly charged on December 13. At the commencement of business on the 13th the credit balance of this account was $3,402.04. Eight items aggregating $5,997.40 were during said day received and appeared as credits in said account. The charges entered therein, including draft No. 129464, aggregated $9,272.50, with a credit balance at the close of the business day of $126.94. Again, the record affords no information as to the relative order in which the transactions recorded occurred.

As the last of this series of four, we have a transaction of the same character in which draft No. 129469 issued by the First National Bank of Plattsmouth on the Omaha National Bank is involved. As to this, claimants in their brief suggest "this draft of $500 is dated December 13 but apparently paid on December 11, 1926."

The only evidence we find in the record sustaining this inference is the stamp of the Omaha branch of the Federal Reserve Bank of Kansas City, acknowledging receipt of payment thereon "December 11, 1926," which appears on the back of this instrument. However, the previous indorsement on the same instrument by this same institution bears date of December 14, 1926. The ledger of the Omaha National Bank discloses that no charge of $500 was made on this account on either the 11th or 13th of December (the 12th was Sunday) and a charge of that amount does appear under date of December 14, 1926.

We are therefore forced to the conclusion that the draft correctly states the date of its issuance, and that it was in fact paid by the Omaha National Bank on the 14th. On the 14th at opening of business the credit balance in favor of the First National Bank of Plattsmouth was $126.94. During the day's business seven items of cash credits were received by the Omaha National Bank and entered in said account aggregating $4,185.03. During the same time nine cash withdrawals including draft No. 129469 of $500, it appears, were charged against the same, the credit balance at the close of the day being $529.85.

The burden of proof in the instant case imposes on claimants the duty to establish that a part of the trust fund was employed by the Omaha National Bank in payment of one or more of the four drafts now under investigation. Thus, four transactions are before us and the controlling fact in each is the "previous low balance" in such account. If the immediate result of any payment made by the Omaha National Bank upon any one or more of these drafts was to reduce the immediate ensuing credit balance in this account below the amount of the "previous low balance," trust money has been employed. If, however, the ensuing balance resulting from the payment alone in connection with the amount previously on hand equals or exceeds such previous low balance, trust funds were not employed.

The evidence before us considered in the light most favorable to claimants wholly fails to establish this deter-

minative fact as to the previous low balance in any one of the four transactions. At the most, it may be said trust funds may, or may not, have been employed. Each of these payments, it thus appears, was not made with moneys or credit that is identified as belonging to or being a part of the trust funds in possession of drawee bank.

The conclusion is that with reference to the four items in question the claimants have failed to establish their case and are not entitled to any preference based thereon. *Peters v. Bain*, 133 U. S. 670; *Farmers Nat. Bank v. Pribble*, 15 Fed. (2d) 175; *Emigh v. Earling*, 134 Wis. 565. Last case approved in *Rankin v. Emigh*, 218 U. S. 27.

The judgment that was entered in the district court allowed claimants the recovery of interest at 7 per cent. per annum from December 13, 1926. This was error. Claimants are not entitled to interest under the facts in this case in this proceeding. *White v. Knox*, 111 U. S. 784; *Butler v. Western German Bank*, 159 Fed. 116; *Richardson v. Louisville Banking Co.*, 94 Fed. 442; *Hallett v. Fish*, 123 Fed. 201; *People's Nat. Bank v. Moore*, 25 Fed. (2d) 599; *Merrill v. National Bank of Jacksonville*, 173 U. S. 131.

George O. Dovey, appellant, as his separate appeal, among other questions, presents the contention that the cause of action stated against him in the pleadings was essentially an action at law, in the trial of which he was entitled to a jury, and that the district court erred in overruling his several demands for that relief. With reference to the facts upon which that liability as against Dovey is based, all appellees in their brief in substance state that "George O. Dovey, the cashier of the First National Bank of Plattsmouth solicited of Mia U. Gering, the treasurer of Cass county, Nebraska, the deposit of this tax check of $24,663.68, both knowing that the then depository bond of the bank was insufficient under the law for such a deposit as this check would have made; that he promised to furnish a sufficient bond; that, when he called at her office to take the check to the bank to deposit, he said he had such a bond, and said, 'If I had known I was coming down, I would have

brought the bond with it. It is at the bank;' that he also told her the bank was in sound financial condition; that she trusted to his statements that there was a sufficient bond and the bank was sound, believed his statements, and made the deposit relying thereon;" and their several pleadings contained prayers for a money judgment only against Dovey.

It is obvious from an examination of the pleadings that Dovey was not a necessary party to the determination of the trust nature of the funds in controversy and identifying them with assets in the receiver's possession. The only relief which any of the parties to this action sought as against Dovey was a personal judgment for the sum of money certain. The facts recited entitle the appellees herein to an action at common law for deceit, and it may be said *arguendo* that this was the form of action which was followed under somewhat similar circumstances in the cases growing out of the failure of the Capital National Bank of the city of Lincoln. At all events, the rule appears to be established in this controversy that—"An action by a private individual against directors of a national bank for making false reports must be maintained, if at all, as an action at common law for deceit." 23 R. C. L. 641 sec. 40; *Gerner v. Mosher*, 58 Neb. 135. This form of action at common law was triable by jury, and this right section 6, art. I of the Constitution of Nebraska, perpetuates. *Yager v. Exchange Nat. Bank*, 52 Neb. 321; *Kuhl v. State*, 44 Neb. 584. It thus fairly appears that the trial court erred in overruling the application of defendant Dovey, for a jury trial.

It follows, therefore, that the decree heretofore entered by the district court for Cass county in the above entitled action is reversed and remanded, with directions to enter a decree awarding preferences to the claimants in the sum of $2,520.73 only, viz., $126.94 of the balance in the Omaha National Bank, $197.32 of the balance in the Federal Reserve Bank (Omaha), $1,181.47 being the cash on hand in the said bank at the time of its suspension. This sum

includes $1,000 and also the sum of $1,015 paid by Bach on the $2,500 renewal note after the appointment of the receiver in this case. That all additional sums due from said receiver to said claimants be allowed to said claimants as general creditors of said bank, and that the proceedings as to George O. Dovey be dismissed without prejudice to the institution of a proper action at law.

REVERSED.

Goss, C. J., and Rose, J., dissent.