442

STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V.
STATE BANK OF BEE, E. H. LUIKART, RECEIVER, APPELLEE:
JOHN LUSHER, INTERVENER, APPELLANT.

FILED MARCH 1, 1935. No. 29164.

*McKillip & Barth*, for appellant.

*F. C. Radke, Barlow Nye* and *Thomas, Vail & Jones*,
contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE
and CARTER, JJ., and CHASE, District Judge.

GOSS, C. J.

This is an appeal by the estate of John Lusher from the
classification of a deposit in the receivership of the State
Bank of Bee, Seward county.

The bank was adjudicated insolvent on June 4, 1931,
and E. H. Luikart was appointed receiver. When the bank
closed John Lusher held its certificate of deposit for
$15,500, dated February 28, 1931, regular on its face and
calling for 4 per cent. annual interest. From other facts
the receiver concluded that the actual deposit and previous
ones out of which it had grown evidenced payment by the
bank and acceptance by Lusher of interest on his deposits
at the rate of 5 per cent. Since April 1, 1926, it has been
illegal to pay or receive, directly or indirectly, more than
4 per cent. on deposits and such an illegal deposit is not
entitled to priority of payment from the assets of the bank.
Comp. St. 1929, sec. 8-140; Comp. St. Supp. 1933, sec.
8-140. The receiver reported, classifying this claim as

invalid. The district court provided for pleadings and a hearing on this and other claims of like nature. Pleadings were filed by claimant and the receiver, a trial of the issues was had before the court on May 26, 1933, and on December 30, 1933, when the testimony was closed by the evidence of one witness produced by the intervener. Mr. Lusher had testified at the trial, but died in September, 1933, and the cause was revived in the name of his administrator. The district court found that the claim was not entitled to priority nor to the benefit of the depositors' final settlement fund, but should be allowed as a general claim against the bank and decreed accordingly.

Appellant assigns and argues errors which may be summarized as follows: (1) The court erred in not transferring the cause to the law docket; and (2) the judgment is not sustained by the evidence.

It cannot be disputed that the receivership case in which the cause is bedded is entirely equitable in its nature. The funds held by the receiver constitute a trust to be administered for the benefit of classes to which, under the statute, the law allocates interests in those funds. The claimant here alleges facts showing he belongs in the certain preferred class of depositors having priority. The receiver pleads facts indicating that the claim is only a general claim. On the issues thus made, the inquiry is not only as to the amount of the claim, of which strict proof has been required, but is as to whether the facts justly entitle the claim to participate in a fund held for equitable distribution to preferred claims or whether it is subject to such preferred claims. The amount of the claim is really only incidental. The quality of the claim, which is the chief inquiry, and the character of the fund out of which it is to be paid are determinable by equitable cognizance. It has always been considered in this jurisdiction that causes like that before us are to be heard and decided by a court sitting in equity and not by a jury.

Appellant cites several Nebraska cases to sustain his proposition that intervener was entitled to a jury trial.

In that part of his brief devoted to the argument he uses only one, *Gering v. Buerstetta,* 118 Neb. 54. That was a case in which Gering, county treasurer of Cass county, and others were awarded certain preferences in a proceeding in equity against the receiver of First National Bank of Plattsmouth and George E. Dovey, former cashier thereof. In effect, the suit was to trace and impound certain trust funds in the hands of other banks at the time the particular bank was placed in the hands of the receiver or when it was insolvent. The petition alleged, and the evidence seems to show, that on December 2, 1926, Gering, as county treasurer, had been induced by Dovey to make a deposit of a somewhat larger sum, but among the checks was one of the Missouri Pacific Railroad Company for $24,663.68 for taxes which formed, as the opinion states, the sole basis of the action. The opinion held that the check and its proceeds, when collected, constituted trust funds. The charge against Dovey was that, in soliciting the deposit from the treasurer, his attention being called to the fact that the bond to secure deposits by the county in the bank was already equalled by county deposits, he stated to the treasurer, at her office where he solicited the deposit, that the bank had already obtained a bond which was at the bank, and, if he had known he was coming down, he would have brought it. He also stated the bank was in sound financial condition. She believed his statements and let him have the deposit of the check. The pleadings contained prayers for a money judgment only against Dovey. The opinion holds that the facts recited entitled the appellees to an action against Dovey at common law for deceit and that he should have been given a jury trial as he had requested.

The other cases cited by appellant on the subject of a jury trial, but not argued, are less complicated, are easily distinguishable from the case at bar, and are not applicable, but lack of space forbids their analysis. Intervener Lusher was not entitled to a jury trial and the court did not err in refusing to transfer the cause to a law calendar.

The remaining question is whether the judgment is sustained by the evidence. The certificates of deposit issued to Mr. Lusher, beginning with one of $10,500 issued February 28, 1925, 12 in number, are all in evidence. Each bears on its face the then legal rate of interest. But Mr. Lusher always had a checking account at the bank, and the evidence shows that, when a certificate of deposit came due, his account would be credited with interest at the rate of 5 per cent., instead of 4 per cent. For example, from February 28, 1930, Mr. Lusher held a certificate for $15,000 due "12 months after date with interest at 4 per cent. per annum." On the exact day it was due, his checking account was credited with $750 interest, less $500 added to a new certificate, making the new one $15,500, issued February 28, 1931. This last-named certificate is the one on which the claim in suit is based. Since April 1, 1926, when the law reduced the rate, the history of the certificates, out of which this principal had been built up, shows this method of attempting to conceal the excess interest paid on the certificates in the checking account. In some instances, it should be said, the deposit slips, on which were adjusted the interest, clearly showed that the credit was for 5 per cent. on a definitely described certificate. The deposit slip of February 28, 1931, specifically shows that the interest on the $15,000 certificate due that day was credited at $750 and that $500 was taken out to add to the new certificate for $15,000 which is the one in suit. This deposit slip shows also a withdrawal by Mr. Lusher of $32.17 in cash, leaving him a net credit on the deposit slip of $217.83, which went into his checking account on that day.

The business was handled in his lifetime by Frank Maixner, the president of the bank, who died July 6, 1930, before the last certificate was issued. He and claimant are the only ones who could have testified positively and directly as to whether there was an oral agreement to pay more than the legal rate. Leo Stava was the cashier of the bank and sometimes fixed up the matter of claimant's cer-

tificates under orders from Mr. Maixner. He testified he had never discussed the rate with Mr. Lusher, but that claimant came into the bank about two months after Frank Maixner had died and "asked me if it was the same as before, and I said, 'Yes; Frank told me what to do.' I paid him 5 per cent. or he would want his money to go out." The witness does not know what Maixner told Mr. Lusher, but he told witness to pay 5 per cent. "I was never with them when they were transacting business. They went in the back room and Maixner came out or Mr. Maixner made out the certificate and instructed me and had me make out the draft for him." Mr. Stava, as cashier, executed the certificate sued on. At the time it was executed he paid or saw to it that the bank credited Lusher's account with $750 interest on the previous certificate of $15,000. Stava testified he had no agreement with Mr. Lusher to pay him more than 4 per cent. and never discussed the rate of interest with him. Stava testified, in addition to what we have heretofore quoted in this paragraph, that he did not have the money to pay the $15,000 certificate. To have refused to pay the 5 per cent. interest on it would have closed the bank, if Mr. Lusher had declined to renew and had demanded the money.

It is argued by appellant that John Lusher could not compute interest. He was put through some simple tests in arithmetic in his cross-examination and did not seem to be an ignorant man in such matters, but seemed able to compute interest on money. He testified that, as a boy in Illinois, he got half way through the Fourth Reader. He accumulated "five eighties of land." It overtaxes our credulity to be asked, in all the circumstances, to believe that Mr. Lusher was not conscious, each time he was credited with interest on his certificates of deposit, of the amount he was paid and that the rate was 5 per cent. and not 4 per cent. The circumstantial evidence is too strong. The trial judge saw and heard him and the other witnesses and concluded that the agreed rate was the higher one

and not that expressed in the certificate. We think the judgment was right. It is

AFFIRMED.