# CHARLESTON

DUNN et al. v. BANK OF UNION et al.

Submitted June 16, 1914. Decidede June 30, 1914.

1. BANKS AND BANKING—*Liability of Stockholders.*

    Under §6, Art. XI, Constitution, and §78a, III, Ch. 54, Code 1913, an assignor of bank stock remains liable, after transfer thereof, to the extent prescribed by said sections, for an indebtedness incurred by the bank while he was owner of such shares. (p. 598).

2. NOVATION—*Bank Deposit—Renewal of Certificate.*

    The renewal of bank deposit certificates does not operate as a novation of the original indebtedness. (p. 598).

3. JUDGMENT—*Validity—Defendants Not Served.*

    A decree is ineffectual for any purpose as against defendants who

are not served with process and who do not appear to the cause.   (p. 597).

Appeal from Circuit Court, Monroe County.

Bill by H. D. Dunn and others against the Bank of Union and others.   Decree for defendants, and S. S. Steel and others appeal.

*Reversed and Remanded.*

*Ross & Kahle,* and *R. Kemp Morton,* for appellants.

*R. L. Clark, T. N. Read* and *J. L. Rowan,* for appellees.

LYNCH, JUDGE:

Being then insolvent, the Bank of Union, pursuant to a resolution of its stockholders, on February 29, 1908, conveyed its property to R. L. Clark in trust for the benefit of its creditors, among whom were the plaintiffs in this suit.   Promptly thereafter Clark, by bill in equity, convened the creditors and stockholders of the corporation.   The object of the suit instituted by him was the ascertainment of the corporate assets, including the liability of the stockholders arising under the provisions of §78a III, ch. 54, Code 1913, usually denominated the stockholders' double liability to the creditors of an insolvent state banking institution.   John Osborne and other stockholders, by answers in the nature of cross-bills, charged mismanagement and spoilation by the directors, officers and agents of the bank, and sought relief against them.   But, by its decree sustaining demurrers to the bill and cross-bill answers, the court denied relief against the stockholders, including the directors.

Thereupon the plaintiffs in this suit, they not having theretofore appeared for any purpose to the bill by Clark, though named defendants therein, brought their bill on behalf of themselves and all other creditors of the bank who should join therein.   The suit by the Dunns had for its purpose also the ascertainment of the corporate assets, the collection of the statutory double liability, and the application of both to the liquidation of the bank's indebtedness.   To this suit Osborne and other defendants tendered four pleas in abatement; the first and fourth of which aver separate and distinct, and not a joint or joint and several, liability due from

the bank to plaintiffs; and the second and third of which aver the pendency and purpose of the Clark suit.

Upon appeal, the decree in the proceeding by Clark was reversed, this court holding that the stockholders' liability by virtue of the statute was an asset of the bank, and as such collectible by the trustee. *Clark* v. *Bank,* 78 S. E. 785.

But, before entry of the decree thus reversed, the circuit court heard both causes conjointly, referred them under the double caption to a master commissioner, who made three reports under the court's direction and pursuant to its several orders for this purpose, and sustained the motion of the Dunns to strike the pleas in abatement from the file. Though of this ruling upon the pleas complaint is now made, we do not deem it sufficiently prejudicial to warrant reversal. No one is thereby injured, except in respect of costs, the taxation of which is subject to adjustment under the court's direction at the close of the litigation. As heretofore observed, the Dunn suit was not instituted until after the circuit court had held, though erroneously, that Clark could not as trustee collect the liability imposed by statute. But, had the court held otherwise, as indeed it should have done, and consolidated the causes instead of hearing them as one, its action would not have been erroneous. For two causes between the same parties and involving the same subject matter may properly proceed together to final determination as one suit. *Mosby* v. *Withers,* 80 Va. 82.

While it appears that plaintiffs are not jointly, but are separately, interested in the several items of indebtedness against the bank, they do have a sufficient interest in common to warrant the maintenance of this proceeding. Having such interest in the questions at issue and the relief sought, they did not improperly join as plaintiffs. To the extent of the individual indebtedness severally claimed, they had the right alone, or jointly with other creditors, to demand payment out of the assets, the collection and appropriation thereof to the liquidation of the insolvent bank's debts, as sought by the two causes so heard together. Pom. Eq. Jur. § 269; *Bother* v. *Land Co.,* 89 Va. 455; *Snyder* v. *Cabell,* 29 W. Va. 48.

The bill charges, and the report of the commissioner shows,

that on March 4, 1902, H. B. Dunn loaned the Bank of Union $5000, for which it then issued to him a certificate of deposit, which it renewed March 18, 1903, February 26, 1904, April 18, 1905, and April 18, 1906, and on each date, by endorsement thereon, cancelled the old and issued a new certificate therefor, to which time it paid the interest then due thereon; that on April 15, 1903, he also loaned the bank an additional $2000, for which it then issued to him a certificate, which in like manner it renewed April 15, 1905 and 1906; that on October 22, 1903, L. B. Dunn loaned the bank $3660, for which it issued to him a certificate of deposit; but by payment on April 3, 1905, it reduced his loan to $2000, for which it then issued a new certificate, and again renewed it October 19, 1905, and April 14, 1905. The loans thus made to each plaintiff remain wholly unpaid, except as heretofore noted, and to enforce payment thereof they instituted these proceedings.

The plaintiff H. B. Dunn unites as appellant, solely, as he says, because the court erred in decreeing against certain of the stockholders who, though parties defendant to both bills, were not served with process and did not appear for any purpose in either cause, and demands the correction of the decree in this respect. Of course, to the extent it fixed liability and decrees against defendants not served and not appearing, the decree as to them is manifestly erroneous. Those who are thus prejudiced, so far as ascertained, are Isabelle C. Hereford, Willie Mae McDonald, Clara Buck, Allen Caperton, Francis G. Hereford, Katharine H. Stoddert and Guy H. Bissett. They are, however, not complaining; and he can not here complain, because through his efforts, and without previous protest on his part, the decree was thus procured.

The inquiries of first importance relate to two propositions advanced by appellants, as to both of which the circuit court held, as appears from its decree, adversely to appellants. To the reports of the commissioner exceptions were taken in so far as he found that the reissuance of the deposit certificates operated as a novation of plaintiff's indebtedness, and that those liable therefor were the owners of shares of the bank's

capital stock on the date of the last renewal certificates. These exceptions were overruled, and the report was confirmed. In both respects the decree is erroneous.

Except as noted, the loans remain unpaid. Liability therefor accrued when each plaintiff deposited his money with the bank, upon the understanding, if not upon an express agreement, that they were to be treated and deemed actual loans to the bank upon interest. The certificates originally issued therefor were mere evidences of indebtedness then contracted. In other words, the certificates were, in effect, the notes of the bank, payable to each plaintiff. Although renewed by the subsequent issuance of other certificates, as previously observed, the original liability was not extinguished and a new liability created, any more than a new note pays an antecedent debt, though reduced to judgment, unless the parties so intended or agreed, the burden of showing such intention and agreement resting always upon him who claims the benefit of the discharge. Where these conditions are left in a state of uncertainty or doubt, a renewal, in whatever form presented, is not a payment. *Morriss* v. *Harveys,* 75 Va. 726. Even a negotiable note, accompanied by a receipt in full, does not extinguish a judgment. *Feamster* v. *Withrow,* 12 W. Va. 611; See also *Moore* v. *Johnson,* 34 W. Va. 672; 3 Min. Inst., Pt. I, p. 414. The rule generally prevailing, though not without exception, is that a new obligation given in lieu of a prior one does not alone authorize the presumption of payment. *Sullivan* v. *Saunders,* 66 W. Va. 350; *Bowman* v *Miller,* 25 Gratt. 331; *Coles* v. *Withers,* 33 Gratt. 187; *Insurance & Deposit Co.* v. *Railroad Co.,* 86 Va. 1; *Loan & Trust Co.* v. *Engleby,* 99 Va. 168; *Bank* v. *Machine Co.,* 99 Va. 411. See also *Barnes* v. *Crockett,* 111 Va. 240. The taking of a new simple contract obligation for a specialty debt does not extinguish the latter, nor suspend the right of action thereon. *Dudley* v. *Barrett,* 66 W. Va. 363.

Upon the second proposition, the argument presented, if followed, would lead to the exoneration of those who held stock in the bank at any time before the dates of the last renewal certificates of indebtedness, provided they had prior to that date transferred their shares. The appellees who

would sustain this finding rely on § 77, ch. 54, Code 1913, wherein it is provided that the transferee of stock in a banking company "shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder" thereof. A cursory examination of the section cited forcefully suggests the soundness of the argument thus advanced. But, when viewed in the light of § 78a III of the same chapter, together with § 6, article 11 of the constitution, such contention is manifestly unsound.

Section 78a III imparts express legislative force and vigor to the constitutional requirement, and provides, in the identical language of the latter, that the stockholders of every bank organized under the provisions of that chapter "shall be personally liable to the creditors thereof, over and above the amount of stock held by them respectively, to an amount equal to their respective shares so held, *for all liabilities accruing while they are such stockholders"*. Both constitution and statute impose a personal liability on stockholders for debts accruing while they are such share-holders in a banking corporation—a liability thereby made personal; not as sureties but as principals, for double the amount of the shares so held by each of them at the date the liability accrues. *Hobart* v. *Johnson,* 8 Fed. 493.

The liability of the bank to plaintiffs accrued the instant the loans were made. If not then, when did it accrue? To accrue, as defined by lexicographers, means to "come into existence", "to become vested". The debts came into existence, and became vested as a corporate liability, when plaintiffs deposited their money with the bank and it was accepted by the bank as a loan by them for its benefit. Therefore, under the statute and constitution, those who were then stockholders became personally liable for its repayment, to the extent prescribed by the constitution and statute. To hold otherwise would render nugatory, would eviscerate, the plain mandatory provisions of both. While the authorities vary in their views upon the proper construction of similar provisions, the construction here proposed finds ample support in the following cases: *Moss* v. *Oakley*, 2 Hill 265; *Judson* v. *Rossie,* 9 Paige 598; 38 Am. Dec. 569; *Harger* v.

*McCullough,* 2 Den. 119; *Tracy* v. *Yates,* 18 Barb. 152; *Phillip* v. *Therassen,* 11 Hun. 141; *Williams* v. *Hanna,* 40 Ind. 535; *Chesley* v. *Pierce,* 32 N. H. 388; *Larrabbee* v. *Baldwin,* 35 Cal. 155; *Norris* v. *Johnson,* 34 Md. 485; *Fleeson* v. *Savage,* 3 Nev. 157; *Windham* v. *Sprague,* 43 Vt. 502; *Thebius* v. *Smiley,* 110 Ill. 316. See note to *Thompson* v. *Bank,* 3 Am. St. 860, for the various holdings on this subject. Of the liability thus imposed on stockholders, Morawetz, in his work on Corporations, § 879, says it is a liability for which they are bound as ''for debts which they themselves owe in a corporate capacity'', and not as mere sureties or guarantors.

But this construction does not impair the efficacy, nor is it in contravention, of the provisions of § 77. They are not necessarily inharmonious or inconsistent. Both may stand together. While § 78a III imposes liability on a stockholder for a debt accruing while he remains the owner of bank stock, he exonerates himself, for subsequent debts accruing, by a transfer thereof. Such subsequent liability devolves upon the transferee, pursuant to § 77. By that section, the latter does not succeed to the profits theretofore paid as dividends on the stock out of the bank's earnings. If the transferee succeeds to past liabilities, why does he not succeed to the benefits previously accruing, payed to and enjoyed by the former owner? If the assignee of the shares succeeds to the liability of the assignor, why does he not also succeed to the former rights of the assignor? The section says he shall succeed to all the rights and liabilities of the prior holder, and yet no one would construe its language to mean that the benefit of the antecedent rights would pass to the transferee. The manifest purpose and intent of the legislative enactment, as expressed by this section, is, when properly analyzed in the light of § 78a III, that the transferee succeeds to the rights and liabilities which accrue by virtue of the shares subsequent to the change of ownership. As thus construed, the two sections are not inconsistent. This interpretation gives effect and validity to both, and enforces the mandatory constitutional provision under which they were enacted. That it may, under some circumstances and conditions, operate oppressively, does not afford a sufficient reason for holding con-

trary to the manifest purpose and plain mandate of the sections cited. Hardships are unavoidable, whether assignor or assignee assumes the burdens imposed. The construction given prevents imposition by an assignor who transfers his stock, in a banking corporation whose tendency towards insolvency he reasonably suspects but of which he may not have any definite information, and thereby relieves himself from the liability imposed by statute for the protection of the creditor who deposits in or loans his money to the bank because of his confidence in the integrity and sound business judgment of its stockholders.

We therefore reverse the decree of August 4, 1911, and remand the cause for further proceedings therein, according to the principles herein announced and otherwise according to equity.

*Reversed and Remanded.*