STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V.
SOUTH FORK STATE BANK OF CHAMBERS: CENTRAL NA-
TIONAL BANK OF LINCOLN, CLAIMANT, APPELLANT:
EDWARD ADAMS, RECEIVER, APPELLEE.

FILED OCTOBER 20, 1924.   No. 24097.

1. **Banks and Banking:** BANK GUARANTY LAW: DEPOSIT. A check
equivalent to money for banking purposes, if accepted by a
bank as the consideration for a time certificate of deposit, may
amount to a deposit as distinguished from a loan, within the
meaning of the bank guaranty law.

2. ———: RECEIVERS. Ordinarily a receiver takes charge of bank-
ing affairs where the bank left them, and cannot generally, in
absence of fraud, mistake, or violation of law, open closed trans-
actions which would conclude the bank, if solvent.

3. ———: DEPOSIT: EVIDENCE. A plea that a time certificate
of deposit was not protected by the bank guaranty fund be-
cause it was a mere renewal of former certificates fraudulently
issued *held* not established by the evidence.

APPEAL from the district court for Holt county: ROBERT
R. DICKSON, JUDGE. *Reversed.*

*Field, Ricketts & Ricketts,* for appellant.

*C. M. Skiles, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN,
GOOD and THOMPSON, JJ.

ROSE, J.

This is a controversy between the receiver of the South
Fork State Bank of Chambers, insolvent, and the Central
National Bank of Lincoln, claimant. In a proceeding to
wind up the affairs of the insolvent, claimant interposed a
a plea for the allowance of a claim for $6,000 and interest.
While insolvent was conducting a commercial banking busi-
ness August 30, 1922, it issued to Blake Maher a certificate
of deposit for $6,000, maturing in two months, and bear-
ing interest at the rate of 5 per cent. per annum. By in-
dorsement of the payee, claimant acquired this paper in

624          NEBRASKA REPORTS.          [VOL. 112

State, ex rel. Spillman. v. South Fork State Bank.

the regular course of its banking business. Demands for payment resulted in the issuance of a draft by insolvent to claimant for $6,050 November 1, 1922, on the Bank of Benson. The draft was protested for nonpayment and was never paid. Insolvent went into the hands of a receiver. The relief sought by claimant was the allowance of this item as a deposit within the meaning of the bank guaranty law.

The receiver resisted the claim on the grounds that the transactions resulting in the issuance of the certificate in controversy amounted to a loan instead of a deposit, and that it was a mere renewal of former certificates of deposit issued by insolvent to the Old Line Insurance Company pursuant to a fraudulent arrangement to accept therefor premium notes without regard to their value as commercial paper, the fraud resulting in a loss to insolvent.

Upon a trial of the issues the district court allowed the item in full as a general claim against the assets of insolvent, but precluded a resort to the bank guaranty fund for payment. Claimant has appealed.

Did the 6,000-dollar certificate issued by insolvent to Maher August 30, 1922, evidence a deposit protected by the bank guaranty fund? The evidence shows that Maher gave insolvent his check for $6,000 and received therefor the certificate of deposit in question for a like amount. The check was paid and the bank received the proceeds thereof in full. The check, therefore, was the equivalent of money for commercial banking purposes. On its face the transaction with Maher was ordinary banking which the law sanctions as a basis for a deposit. Claimant, for full value in the ordinary course of business, acquired Maher's interests in this certificate of deposit and is the owner of the claim. In allowing the item as a valid claim against the assets in the hands of the receiver, the district court did not err.

Was the certificate of deposit on which claimant's case rests a renewal of former certificates tainted by fraud?

This defense may be outlined as follows: Maher was an agent and stockholder of the Old Line Insurance Company, and entered into a contract with an officer of insolvent to aid in procuring insurance risks, to accept part of the agent's commission, to buy premium notes and issue therefor to insurer certificates of deposit. It is argued that this arrangement did not contemplate the exacting of premium notes equivalent to money for commercial banking purposes; that many of the notes accepted by insolvent proved to be worthless, and that the certificates fraudulently issued therefor did not represent deposits of money or the equivalent thereof. It is further argued by the receiver that these certificates issued by insolvent and held by the Old Line Insurance Company were renewed by Maher's certificate of deposit for $6,000 while some of the premium notes, though obligations of insurer to insolvent, remained unpaid. This is a mere summary of the receiver's views.

The issuance of the original certificates were closed banking incidents when claimant's rights accrued. In relation to past banking transactions the powers and duties of the receiver, as a general rule, do not transcend those of the bank while solvent and open for the transaction of business. Ordinarily the receiver takes charge of the affairs of the bank where the latter left them. In the usual course of business, banks buy notes and issue certificates of deposit. The bank itself did not perpetrate a fraud. The arrangement pleaded by the receiver as a defense herein may have been unwise and censurable, but insolvent's officers could have protected the bank by rejecting all premium notes not equivalent to money for banking purposes. Lack of judgment and improvident dealings do not necessarily constitute fraud. This defense does not seem to be established by the evidence. The more convincing view of the proofs is that the bank, had it survived, could not have defeated Maher's certificate as evidence of a deposit, and that the receiver is in no better situation. The conclusion is that the claimant's certificate is not a renewal of fraudulent certificates previously issued. It

represents a deposit within the meaning of the bank guaranty law and should be protected as such. For the purpose of correcting the error in the finding to the contrary, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Banks and Banking, C. J. p. 485, sec. 15; p. 737, sec. 503 (1926 Ann.).