STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. THURSTON STATE BANK: GEORGE I. PARKER, RECEIVER, APPELLANT: HEINRICH JOHNSEN ET AL., APPELLEES.

FILED JUNE 19, 1931. No. 27788.

C. M. Skiles, Fred S. Berry and I. D. Beynon, for appellant.

Ambrose C. Epperson, Charles E. Sandall, Robert Van Pelt, Edson Smith, George A. Keyser, John E. Eidam, Saxton & Hammes and J. C. Kinsler, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

This is an appeal by the receiver of Thurston State Bank from a decree ordering the United States to be paid a first preferred claim, and Johnsen and Krusemark to be paid a second preferred claim, subject only to that of the United States, out of the assets of the bank.

On January 12, 1928, the department of trade and commerce of the state took charge of the bank. The next day it placed it under the dominion of the guaranty fund commission. The commission handled its affairs until April 6, 1929, when a receiver was duly appointed by the district court for Thurston county. When the bank was taken over by the department, the superintendent of the Winnebago Indian Agency had on deposit Indian trust funds aggregating $14,250. Before these funds were deposited, the Thurston State Bank, as principal, and Heinrich Johnsen and John F. Krusemark, as sureties, gave bond to the

United States for the payment of the funds according to the terms specified.

Upon the failure of the bank, the United States pressed the sureties for payment and they paid $4,000 of the principal and $570 of interest, pending filing of claims with the receiver. The United States then filed its claim with the receiver for $10,250 and interest and later filed its petition in intervention for that sum. Johnsen and Krusemark likewise asked for the $4,570 they had paid the United States and pleaded subrogation to the rights of the United States. When the issues were tried the sureties had paid another $2,000. The judgment and decree allowed the United States a first preferred claim for $8,250, with interest, and allowed Johnsen and Krusemark $6,570, with interest, subject only in priority to the claim of the United States.

At the outset we are confronted with a motion by all the appellees to dismiss the appeal "for the reason that said receiver has not been granted directions or authority from the district court * * * to prosecute said appeal;" and by a motion by Johnsen and Krusemark to dismiss the appeal as to them for lack of jurisdiction, because there was no notice of appeal filed in the district court or served on them out of this court.

The final order by the district court, dated September 15, 1930, overruled the motion for new trial and allowed forty days from the rising of the court to prepare and serve a bill of exceptions. The bill was duly served on the appellees, and after keeping it about two weeks they made no corrections but stipulated on December 31, 1930, that it was complete. On January 6, 1931, the trial judge certified and allowed it and made it a part of the record in this case. The transcript was filed, and the appeal docketed in this court on December 1, 1930, and the bill of exceptions was filed on January 7, 1931. There is no question that these acts were all performed in proper time. The rules of this court require an appellant to file his

brief within one month from the date the appeal is docketed and within three months from the date of the judgment, decree or final order appealed from. So appellant's brief day was fixed by the rules as not later than December 15, 1930, that being three months from the date of the judgment. But, as shown above, the bill of exceptions was not yet allowed in the district court. So, on December 10, 1930, all parties filed in this court their stipulation "that the appellant may have until February 1, 1931, in which to serve and file brief herein, *without prejudice to right of appellees to move for dismissal of appeal.*" The italics are ours to indicate words that were evidently written after the stipulation was originally typed but before it was signed. We regarded this as an affirmative request to the court by all the parties to postpone the rule day for briefs on the merits and we honored it because it seemed, as it probably was, impossible for appellant to prepare briefs without the bill of exceptions, which was not filed until exactly four weeks later. The transcript shows that a proper notice of appeal had been duly filed in the district court as to the claim of the United States, and that another notice had been duly filed as to "the claim of the United States of America as a preferred claim against said Thurston State Bank, Thurston, Nebraska, for the sum of $6,570, and interest thereon." This claim originally belonged to the United States, but this exact amount had been allowed Johnsen and Krusemark because, since the bank had failed, they had paid that amount to the United States and were allowed it on the ground of subrogation. Evidently by mistake the appellant here described the United States as the claimant instead of Johnsen and Krusemark.

Assuming, without deciding, that there was technically no proper notice of appeal filed in the district court as to the Johnsen and Krusemark claim, we are of the opinion that their stipulation, affirmatively requesting this court to extend the brief day, amounted to a general ap-

pearance and was a waiver of any other or further notice of appeal. The words we have italicized in quoting the stipulation do not save Johnsen and Krusemark from jurisdiction of the appeal against them in this court. They asked an affirmative order. When they joined appellant in asking time for briefing the case, they waived other notice of appeal. Their stipulated reservation of right to move to dismiss might be invoked if they sought to dismiss on some other ground than lack of notice, such as that the appeal was frivolous, that all parties necessary to a full determination had not been brought up, that there was no necessary bill of exceptions, or that the transcript had been filed too late to give this court jurisdiction. An appellee who, after the transcript is filed in this court and within the period when notice of appeal may be given, joins appellant in a written stipulation and thereby requests and secures an extension of brief day waives other notice of appeal.

In support of the motion by all three appellees to dismiss the appeal because the receiver had not been granted directions or authority by the district court to prosecute this appeal, the appellees have presented many different propositions of law and have cited authorities on them. To review them would take time and space without being of value to the parties or to the profession. Generally, it may be said that these instant claims were prosecuted, defended and adjudicated in the same case in which the receiver was appointed and where all matters cognizable by the district court in connection with this bank and receivership were handled. Such a bank receivership differs from a sporadic case in which a receiver is appointed and acts for perhaps a single purpose. While it is true such a bank receiver is an arm of the court, yet it is peculiarly the function of such a receiver to represent the interests of all the owners of the bank property of which he is placed in charge and to see to it, so far as reasonably proper, that these bank assets go to those who are

entitled to them. Should he have reasonable grounds to be aggrieved at the assignment of rights of priorities by the court or the quality and rank of the claims allowed, and should he desire a review of the order of the court in that respect, why should he not be entitled to such review if no objection is made or no restraint put upon him by the court? But when, as here, the district court, in the final order, expressly allows the receiver time to prepare his bill of exceptions and fixes his supersedeas bond and later settles the bill of exceptions, it would seem to indicate that the district court knew it was the purpose of the receiver to appeal and that it authorized him to appeal. We are of the opinion that the nature and qualities of the receivership and the above recited acts of the court authorized the appeal to the extent, at least, that it is not subject to dismissal on motion by appellees for lack of authorization.

On January 12, 1928, the bank was taken over by the department of trade and commerce. On the next day the department placed the bank in charge of the guaranty fund commission, and the commission continued to handle the affairs of the bank until April 6, 1929, when the receiver was duly appointed. Between January 12, 1928, and April 6, 1929, new deposits were made by customers of the bank. These new deposits were kept separate from the old and were all paid to the depositors before the receiver was appointed. None of the deposits in the bank when the department took charge on January 12, 1928, have been paid. The question involved on the merits is one of priority. The appellant receiver claims all deposits have equal priority as a general lien on the assets as of January 12, 1928. The appellee, the United States, and Johnsen and Krusemark (sureties who have paid the United States portions of its deposits) claim priority over other depositors.

The claim of the United States is based on the provisions of section 3466, Rev. St. U. S. (title 31, U. S. Code,

sec. 191, 31 U. S. C. A., sec. 191), which reads as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3467 provides: "Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

The following pertinent part of the bankruptcy act, as amended May 27, 1926, and in force, is quoted from section 3, ch. 406, 44 U. S. St. at Large, 662 (11 U. S. C. A., sec. 21): "Acts of bankruptcy by a person shall consist of his having * * * or, while insolvent, a receiver or trustee has been appointed, or put in charge of his property."

In the brief on behalf of the receiver, who is the appellant, it is conceded that, when the receiver was appointed for the bank on April 6, 1929, an act of bankruptcy was committed. That is the settled law. But appellant claims this is immaterial because the claimants contend their right of priority attached on January 12, 1928, and because appellant asserts that the appointment of a receiver was not alleged as an act of bankruptcy. The suit of claimants is ancillary to the receivership case.

The district court ordered pleadings to be made up. The United States and Johnsen and Krusemark, claiming by right of subrogation, made up their pleadings on their separate claims theretofore filed. The United States filed its petition, setting out its deposits and their nature, including the suretyship of and payments by Johnsen and Krusemark, pleaded "acts of bankruptcy," pleaded section 3466, and prayed for priority. As an act of bankruptcy, it first set out that the bank is insolvent and on January 12, 1928, permitted the guaranty fund commission to take over its affairs, and then pleaded that the receiver was appointed on April 6, 1929. It is true the allegation as to the receiver was in the next numbered paragraph after the first above alleged act of bankruptcy. But it should be noted that the receiver did not attack the pleading by demurrer or by motion. He answered it by a plea to the merits, admitting the appointment of the receiver, and, after reply, he raised the question for the first time on the trial by oral objection to the reception of evidence. We think the objection was properly overruled. Regarded as a demurrer it searched the record. The appellees are entitled to whatever priority the bankruptcy law and section 3466 of the United States Revised Statutes allow them, as arising out of the pleadings and proofs. The appointment of the receiver was adequately alleged and proved.

The section of the banking law particularly before us for consideration is the first part of section 24, ch. 30, Laws 1925, now section 8-1,102 Comp. St. 1929, reading as follows: "The claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership, including the liability of stockholders, and, upon proof thereof, they

shall be paid immediately out of the available cash in the hands of the receiver."

The items that first challenge our attention are "at the time of the closing of the bank" and "thus under receivership." From January 12, 1928, when the department of trade and commerce took the bank and on the next day turned it over to the guaranty fund commission, until at least March 25, 1929, when the application for receiver was filed by the attorney general, the commission was examining and operating the bank. If at any time during that period its own assets would have justified its return to its officers, or if sufficient fresh money had been put into it, or if proper reorganization had been effected, the banking machinery of the state would have been withdrawn. Under our statute not the banking department but the court must adjudicate and order liquidation. In the meantime the bank had not been "closed." It had, as we have shown, received fresh deposits, had kept them separate and had paid them all out before turning the bank over to the receiver. At the trial the parties hereto stipulated that, from January 13, 1928, "said commission remained in charge of the property, business and affairs of said bank until a receiver was appointed for said bank by this court." To some extent, at least, it was run as a going concern. No depositor knew, in a legal sense, that the bank would be closed even after the receivership was applied for until by its decree the court found its insolvency, ordered the commission to liquidate the bank and appointed the receiver for that purpose. When the bank was thus closed, all "deposits, not otherwise secured, and claims of holders of exchange" had priority over all other claims, except taxes, and they continued "thus under receivership." In other words, the legislature intended that a bank would cease to be a going concern and would be closed when the court, under section 8-190, Comp. St. 1929, adjudicated it insolvent and ordered it liquidated. The status and priority of depos-

itors was fixed as of that time and continued "thus under receivership."

The appellant cites *Guaranty Fund Commission v. Teichmeier,* 119 Neb. 387, as authority for holding that the lien of depositors is impressed on the assets of the bank as of the date when the department of trade and commerce takes over the bank. That case arose in a situation where the guaranty fund commission was still in charge of a bank. No receivership was involved. A creditor had obtained a judgment against the bank while it was in charge of its own affairs. The bank appealed to the supreme court and superseded the judgment. The judgment was affirmed and the mandate issued. In the meantime, while the case was pending on appeal, the bank was taken over by the department and put under an agent of the commission. Judgment was entered on the mandate and an execution was issued and levied upon the real estate, being the banking house property. The commission sought to enjoin the levy. The district court held that the judgment creditor acquired a judgment lien upon the real estate of the bank, that the perfecting of an appeal and giving supersedeas suspended the lien but did not vacate it, and that any rights acquired in said real estate by others subsequent to the judgment and during the pendency of the appeal are subject to said lien, but that, while the real estate was in the possession of the agent of the banking department, the defendants should not be permitted to sell said real estate. We affirmed the holding of the district court to the effect that the judgment of Teichmeier was a lien against the real estate and held that the order of the district court preventing the defendants from selling the real estate while in the possession of the department was not final, but interlocutory, and therefore not appealable. In the argument in the body of the opinion, and in the syllabus, we discussed the meaning of that portion of chapter 30, Laws 1925, heretofore quoted in this opinion, and stated that the lien

of depositors is fixed as of the date when the department takes over a state bank. We would have satisfied the issues really arising in that suit had we said on that point that the lien of depositors and holders of exchange on the assets of a failed state bank is subject to valid existing prior liens upon the real property of the bank. That particular case was decided correctly on the merits and we have no cause to modify or change the result. However, we take this occasion to modify the opinion in *Guaranty Fund Commission v. Teichmeier, supra,* and particularly the second paragraph of the syllabus, so as to conform to the views we have expressed in this instant opinion in which the date when the priorities of depositors take effect is a pivotal issue.

While a state bank may not be put in bankruptcy under the federal act, yet it may commit an act of bankruptcy so as to subject it to the priorities in favor of claims of the United States, as provided in section 3466 Revised Statutes of the United States. That section is to be liberally construed in favor of the United States. *Bramwell v. United States Fidelity & Guaranty Co.,* 269 U. S. 483; *United States v. Bliss,* 40 Fed. (2d) 935; *Bliss v. United States,* 44 Fed. (2d) 909. The right to priority in favor of the United States attaches when the conditions specified in section 3466 come into existence; this right cannot be impaired or superseded by a state law. *United States v. State of Oklahoma,* 261 U. S. 253. So we are of the opinion that the district court was right in allowing the claim of the United States for its unpaid deposit as a preferred claim.

Johnsen and Krusemark, as sureties, were obligated to pay the United States its deposits in the bank. Somebody paid $6,570 on account of this obligation. There are contradictory inferences that might be drawn from the evidence as to whether Johnsen and Krusemark paid all of this. The trial judge who saw and heard the witnesses found they paid it. Giving this the consideration

to which it is entitled, aided by whatever presumptions may be indulged that a required payment is made by one bound to make it rather than by a third person, we find the payment was made by or for these sureties. They are the real parties in interest. There being no intervening equity to bar them, we find, in the circumstances of this case, under the authority of *State v. Kilgore State Bank,* 112 Neb. 856, that these sureties were entitled to be subrogated to the priority rights of the United States to a preferred claim and to be paid out of the assets in the hands of the receiver, after the claim of the United States is paid.

The judgment of the district court is

AFFIRMED.