VAN E. PETERSON, RECEIVER, APPELLEE, V. FRANK P. STRAYER ET AL., APPELLANTS.*

FILED JULY 17, 1931. No. 27689.

*Norval Brothers* and *Scott & Scott,* for appellants.

* On rehearing, paragraph 2 of syllabus withdrawn. See opinion, p. 866, *post.*

*Butler & James, H. P. Armitage, C. D. Ritchie* and *Cordeal, Colfer & Russell, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

This action was begun in the district court for Hitchcock county by the receiver of the Citizens State Bank of Stratton to enforce the double liability of certain stockholders therein.

On or about April 18, 1924, the directors of the bank adopted a resolution declaring an assessment of 100 per cent. on its capital stock. The defendants Frank P. Strayer, E. H. Strayer, Ralph E. Strayer, and J. M. Sutton refused to pay such assessment on the stock respectively owned by them. On or about July 12, 1924, the stock of such defendants was sold to the following parties, who are also made defendants herein, namely: The stock of E. H. Strayer was sold to J. C. Story, who afterwards transferred 20 shares of his stock to the defendant H. P. Armitage; that of Frank P. Strayer was sold to Will C. Dahnke; that of Ralph E. Strayer was sold to Charles W. Wood; and the stock of J. M. Sutton was sold to E. M. Ernest. The original owners of the stock may be hereinafter referred to as the Strayer group, and the purchasers thereof as the Dahnke group. All of the defendants above named have been made parties hereto by the receiver. The trial court found that the Strayer group are primarily liable to the receiver, and that the Dahnke group are secondarily liable for the respective amounts of stock involved in each case, with interest thereon at 7 per cent. The defendants have appealed.

In a former action entitled, *Citizens State Bank v. Strayer,* 114 Neb. 567, arising out of an assessment of 100 per cent. against the capital stock of the bank in suit, we held that the bank could not recover a deficiency of the assessment because such assessment was not authorized by a majority of the stockholders.

In the case now before us the Dahnke group contend that, because this court held that the assessment above mentioned was void, it follows that all proceedings based thereon are also void, and that the group last above named are not stockholders in the bank, and hence are not liable for any of the stock. The Strayer group, however, contend that the sale of the stock to the Dahnke group was valid, and that they, the Strayer group, are no longer stockholders of the bank and are not liable to respond in any event for the obligations and liabilities that arise as against stockholders.

It may be noted here that, in the former action, the Strayer group, then owners of the stock, contended that the assessment was invalid. The same group of defendants now contend, however, that the sale of their stock under the assessment was valid and that they are no longer the owners thereof.

In 21 C. J. 1223, this is said: "A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, is estopped to assume a position inconsistent therewith to the prejudice of the adverse party." And in *United States Fidelity & Guaranty Co. v. Ettenheimer,* 70 Neb. 144, we held that, when a party to an action successfully assailed the proceedings in this court as being unauthorized by law and wholly void, he in turn subjected himself to an estoppel afterwards to assert that they were in any respect valid.

The report of the receiver discloses that, with the exception of cash on hand in the sum of $12,322.32, all the assets of the bank have been exhausted, and that the present liabilities amount to $83,302.19, which the receiver was unable to liquidate. And it is further disclosed by the receiver's report that the deficiency herein amounts to $70,969.87, and this report was approved by the court before the order was issued which authorized the receiver to enforce the constitutional liability against the stockholders herein.

Did the liabilities accrue during the time the Strayer group were stockholders of the bank? Clearly, this must be answered in the affirmative. The bank was placed under the direction of the department of trade and commerce March 10, 1924, at the time the Strayer group was in charge thereof. The stock was sold several months thereafter to the Dahnke group and a receiver was appointed May 25, 1926, to take charge of the affairs of the bank. From an examination of the record we conclude that the losses sustained by the bank were not the result of transactions subsequent to the sale of the stock by the Strayer group to the Dahnke group.

Under section 7, art. XII of the Constitution, this provision appears: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder, and all banking corporations shall publish quarterly statements under oath of their assets and liabilities."

It appears to us that language cannot be plainer nor more explicit than the constitutional requirements above cited. And especially is this applicable where the owners sold their stock while the status of the bank, under the law, was doubtful and its affairs were already under the control of the department of trade and commerce.

We have held that the making and the acceptance by the holder of a promissory note for another note then existing does not constitute the payment of an original indebtedness, or financial obligation, in the absence of a specific agreement therefor. And it is elementary that a renewal note is open to all the defenses which might have been made against the original note. *Auld v. Walker,* 107 Neb. 676; *Berwyn State Bank v. Swanson,* 111 Neb. 141; *Exchange Nat. Bank v. Schultz,* 113 Neb. 346; *Willis v. Sponsler,* 117 Neb. 1. And also, as applicable to the facts in the present

case, it clearly appears that the bank herein, when the sale of the stock was made, was under the direction of the department of trade and commerce, and that the original stockholders are therefore primarily liable for the constitutional double liability where the liability accrued during the time they were in charge of the bank. In *Dunn v. Bank of Union*, 74 W. Va. 594, L. R. A. 1915B, 168, the court points out that "the burden of showing such intention and agreement (rests) resting always upon him who claims the benefit of the discharge." See, also, *Scott v. Deweese*, 181 U. S. 202.

While the Daknke group was in charge of the bank for a period covering less than two years after the receiver was appointed, the record discloses that, during such time, deposits were received while the bank was being conducted as a going concern by the department of trade and commerce. The Dahnke group, or some of its members, were in charge of the bank, and, as such officers and stockholders, we think the district court did not err in holding them secondarily liable for such liability as may have accrued while they were such stockholders. We have held that: "A person who voluntarily assumes the status of a stockholder and director of a bank is estopped as against creditors to deny that he is a stockholder when it is sought to hold him liable for the superadded constitutional liability under section 7, art. XII of the Constitution." *Dempster v. Atwood*, 118 Neb. 579. And we also held in the *Dempster* case that the section of the Constitution above cited pertains to stockholders who were such "when the credit was extended to the bank or the liability incurred by the bank."

We conclude that the trial court did not err in the rendition of its judgment, and that such judgment must be and it hereby is

AFFIRMED.