E. H. LUIKART, RECEIVER OF THE STATE BANK OF BLAIR, APPELLANT, V. CARL J. SCHMIDT ET AL.: T. E. STEVENS, APPELLEE.

286 N. W. 687

FILED JUNE 27, 1939. No. 30619.

F. C. *Radke* and *O'Hanlon & O'Hanlon,* for appellant.

*Wells, Martin, Lane & Offutt, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

An action was instituted by E. H. Luikart, as receiver of the State Bank of Blair, to recover constitutional super-added liability from the stockholders of said bank, said action being brought under section 7, art. XII of the Constitution of Nebraska. T. E. Stevens, the appellee herein, filed an amended answer, pleading, first, a general denial, and, second, that the cause of action was barred by the statute of limitations. Upon trial it was found by the district judge that the petition was filed within four years from the accrual of the cause of action, and that the evidence did not establish any liabilities of the bank remaining unpaid which accrued while the defendant T. E. Stevens was a stockholder, and for which he would be liable under said section of the Constitution, and therefore the petition was dismissed as to the defendant T. E. Stevens. The receiver appeals, but from the finding of the court against him on the issue of limitation of action T. E. Stevens did not take a cross-appeal to this court, so that question is not before us.

The facts in the case may be briefly stated as follows: The State Bank of Blair was organized January 3, 1916, on which date T. E. Stevens became the owner of 20 shares out of the 500 shares issued by the bank. He held these

shares of stock until February 6, 1924, at which time he sold and transferred them to D. J. Hundahl, who held them until April 8, 1924, when he sold the same 20 shares of stock to Lyle Reeh, who owned them at the time the bank failed. On March 17, 1934, all corporate assets having been exhausted, a balance was found due from the debtors of the bank, including its stockholders, in the sum of $258,570.62, and on February 19, 1936, the petition was filed in this case against some 21 or more stockholders of said bank, including said T. E. Stevens, the appellee herein, as well as D. J. Hundahl and Lyle Reeh, each of whom had owned the same 20 shares of stock, and no more.

The evidence discloses that on June 20, 1924, the said State Bank of Blair was taken over by the department of trade and commerce of the state of Nebraska, and operated by said department as a going concern, subject to certain restrictions; that more than three years later, to wit, December 17, 1927, said bank was adjudged insolvent, and R. O. Brownell appointed its receiver.

When said bank was placed in receivership, there were 45 creditors who filed claims based on certificates of deposit, and some of these certificates had been issued as renewals of former certificates, and it was finally ascertained that six certificates, the smallest of them being for $1,000 and the largest in the sum of $9,000, had been issued and reissued repeatedly, as shown on exhibit No. 4, and that the originals of these six certificates in the same amounts had been issued prior to February 6, 1924, the date on which T. E. Stevens, appellee, sold his stock.

It is the contention of the receiver, appellant, that the mere renewal of a certificate of deposit does not have the legal effect of a new certificate of deposit, and that the debt accrues on a certificate of deposit on the date of the issuance of the original certificate of deposit.

We are cited to authorities by the receiver which indicate that some courts hold that a certificate of deposit is somewhat the same as a receipt for money or a promissory note. On the other hand, it is contended by the appellee that a

note is an evidence of a loan, and not a deposit, and that a certificate of deposit does not bear interest after the date of its maturity, so that the owner of such certificate must surrender his certificate and enter into a new contract by purchasing a new certificate if he desires to secure further interest earnings on such sum of money.

It is contended by the appellee, and supported by the evidence, that if the holders of any of the six certificates of deposit originally issued before the appellee ceased to be a stockholder in the bank on February 6, 1924, had demanded cash and interest upon the maturity of the first or each renewal of said certificates of deposit, the cash would have been paid upon demand. The evidence also discloses that, when each certificate of deposit was presented at the window for payment, it was canceled and filed away, and so noted on the records of the bank, whether it was paid in cash or a new certificate issued.

Agnes R. Martin is one of the six certificate holders who owned a certificate of deposit prior to the time appellee sold his stock in the bank, and an examination in her case might clarify the situation as to all of these. On December 1, 1923, she purchased a certificate of deposit for $2,500 in said bank. This was two months and five days prior to the date that the appellee sold his stock in the bank. This certificate was presented and renewed many times, the holder thereof taking out the interest due thereon and buying a new certificate of deposit for the same amount, and on June 10, 1927, she purchased certificate No. 21802 for $2,500, being exhibit No. 32. This exhibit is on the same form as all of the others issued by this bank. It states that it is not subject to check and is nonnegotiable. It is payable to herself or her assigns (but not to her order), only upon the return of the certificate properly indorsed, and the certificate states that on June 10, 1927, the date of the certificate, she has deposited with said bank $2,500 in current funds. This form of certificate, with these many restrictions, differs apparently from some of the certificates of deposit referred to in the opinions from other states. There

is nothing in the evidence to show that she did not receive $2,500 in cash for the prior certificate and pay the bank $2,500 in cash "in current funds," as stated on the face thereof, for the present certificate, which she has filed as a claim against the bank.

In the evidence in the case at bar, Carl J. Schmidt, who had been for many years an officer in the bank, testified, when called by the receiver, that when these time certificates were tendered they were stamped "Paid" and put away as canceled instruments, and if a new certificate was issued on that date it was given a new number, and the transaction of the issuance of the new certificate was complete in itself.

It is also noteworthy that the creditors, in filing their claims on certificates of deposit, made no reference to any antecedent liability, and each claim was based solely on the last certificate issued, which is attached to their claim.

In the assignment of errors the receiver contends that the judgment of the district court is contrary to the evidence and to law; that the renewal of such a certificate of deposit, after the appellee sold his bank stock, did not relieve him of liability therefor, as the renewals only changed the evidence of the original deposit. Therefore, the court erred in finding and adjudging that the renewal of the certificates of deposit constituted a discharge of the original liability on former certificates issued while the appellee Stevens was a stockholder in the bank. To support these alleged errors, the receiver relies, first, on the proposition that a certificate of deposit in a bank is, in legal effect, the same as a promissory note, and that the renewal of a promissory note is not a payment of the original note unless there is a specific agreement that it extinguishes the original indebtedness, and therefore that the renewal of a certificate of deposit does not constitute final payment thereof, and cites Nebraska cases in support of this contention.

The receiver has cited five Nebraska cases which have involved the adjudication of rights under certificates of deposit, and claims that in every case the court refused to consider the renewal certificate by itself, but followed the

transaction back to the first certificate in the series to determine the rights of the claimants.

We will examine these five cases. The first one is *State v. Farmers State Bank,* 111 Neb. 117, 196 N. W. 908, in which an officer of a bank presented a note of a third party, payable to the bank, and took a certificate of deposit to himself, which he sold at a discount, this being a trick or device on the part of the officer to obtain a loan to himself, and it was held not to be a deposit within the meaning of the law.

In *State v. Atlas Bank,* 114 Neb. 650, 209 N. W. 334, a stockholder took a certificate of deposit for Liberty bonds, knowing the bank was in an insolvent condition, and it was held that such a transaction did not constitute a deposit within the meaning of the bank guaranty law.

The next case is *State v. Farmers State Bank,* 115 Neb. 574, 214 N. W. 4, in which it was held that the law will look through all semblances and forms to ascertain whether or not there has been a *bona fide* deposit, and, if not, the depositors' guaranty fund will not afford protection.

The case of *State v. Security State Bank,* 116 Neb. 521, 218 N. W. 405, involved money which a stockholder had placed in a bank to replenish its reserve, and this court held that the certificate of deposit issued therefor did not constitute a deposit made in the usual and ordinary course of business.

The fifth of the Nebraska cases cited by the receiver in support of his proposition is *State v. Citizens State Bank,* 117 Neb. 358, 220 N. W. 593, and is quite similar, wherein it was held that a $3,600 certificate of deposit represented money obtained by a stockholder for the purpose of effecting a loan to the bank, and was not a *bona fide* deposit.

In the reply brief of the receiver we find the case of *Barsness v. Tiegen,* 184 Minn. 188, 238 N. W. 161, 76 A. L. R. 1317. It was an action brought to recover on three certificates of deposit, and it was held that a certificate of deposit is in legal effect a promissory note, and the taking of a renewal certificate does not constitute a deposit which

makes it an offense for officers and directors of a bank to receive deposits when the bank is insolvent, but the peculiar circumstances recited in this case do not in our opinion give any foundation for declaring that the certificate of deposit in the case at bar should be governed by the same rule as is applied to promissory notes.

The receiver also cites the case of *Dunn v. Bank of Union*, 74 W. Va. 594, 82 S. E. 758, L. R. A. 1915B, 168, which holds that the renewal of deposit certificates does not operate as a novation of the original indebtedness, but in the opinion it clearly appears that H. B. Dunn loaned the Bank of Union $5,000, for which it issued to him a certificate of deposit, which it renewed several times thereafter, and the opinion shows that the loans which he made to the bank remain unpaid, and says that the instant the loans were made the liability of the bank to the plaintiffs accrued, or became vested, and, therefore, when a stockholder transfers his stock when said bank is tending toward insolvency, as he reasonably suspects, he cannot relieve himself from liability. The stockholder seems to have been considered, in relation to such certificate of deposit, the same as a joint maker of the note. We cannot see how this case would uphold the contention of the receiver on *bona fide* certificates of deposit, such as appear in the case at bar, together with a *bona fide* sale of bank stock by the appellee.

The receiver claims that this court in *Peterson v. Strayer*, 121 Neb. 587, 237 N. W. 667, has decided the issue involved in the instant case, as he claims that case involved exactly the same facts and law, and the parties made the same contentions as in the instant case.

The receiver admits that the decision itself does not fully set forth the evidence on the issue involved, and has furnished the court with the bill of exceptions from Hitchcock county, and we have made an examination of the 182 pages of briefs. Of the 16 propositions of law in the brief of the defendants and appellants, No. 2 alleged that liability on a certificate of deposit attaches at the date of renewal, and not at the date of the original issue of the same, citing

*Dempster v. Atwood,* 118 Neb. 579, 225 N. W. 683, *State v. South Fork State Bank,* 112 Neb. 623, 200 N. W. 349, and several other cases.

In the brief of the receiver as appellee, in discussing this second proposition, he cites *State v. Farmers State Bank,* 118 Neb. 743, 226 N. W. 332, in which it was held that a renewal of a certificate of deposit by the special agent of the department of trade and commerce will not charge the depositors' guaranty fund with a deposit if it was not a proper charge thereon at the time the department took possession, and discusses numerous other cases cited in the brief. But, in stating the facts in the opinion, Judge Redick says: "The bank issued to claimant certain certificates of deposit for full consideration, but under circumstances contravening the bankers' guaranty fund law."

We have reached the conclusion from an examination of the transcript, bill of exceptions, and briefs in the case of *Peterson v. Strayer, supra,* that the cases cited therein are all based upon illegal or irregular certificates of deposit, not issued upon a *bona fide* deposit, or in the due course of regular banking business. The proposition which we have examined in this *Strayer* case was not supported by the cases cited, and was not discussed in the opinion, and certainly nothing in the briefs nor the opinion determined or passed upon the question when a liability accrues under a *bona fide* certificate of deposit or a renewal thereof. Therefore, they do not support the proposition of the receiver that the trial court in the case at bar erred in holding that renewal of a legal certificate of deposit, after a stockholder had sold his stock in the ordinary course of business, relieved him of any liability therefor.

On the other hand, the appellee herein cites many cases, such as *Harrison v. Ault,* 359 Ill. 75, 194 N. E. 235, 97 A. L. R. 626, which is a case very much in point with the case at bar. James G. Cramer deposited in the State Bank of Yale $1,000 on July 19, 1926, receiving a certificate of deposit, payable six months after date, with 4 per cent. interest. In six months he surrendered the certificate and

took a new certificate in the amount of $900. The cash book showed the proper entry, the date the old certificate was canceled with a "Paid" stamp. The question to be decided was whether the surrender and cancelation of a certificate and the issuance of a new one were merely a continuation of a contractual liability of the bank, created when the first certificate of deposit was issued, or whether in each instance the surrender, cancelation, and issuance of a new certificate created a new contractual relation. It was held that one who was a stockholder in the bank at the time of the issuance of the original certificate of deposit, but who disposed of his bank stock prior to the renewal of the certificate by the surrender of the old certificate, cannot be held liable to such depositor as a stockholder under a statute making every stockholder individually responsible for all liabilities accruing while he remains a stockholder to the amount of his shares.

In *Fremont State Bank v. Vincent*, 112 Wash. 493, 192 Pac. 975, the second paragraph of the syllabus in 192 Pac. 975, reads: "When original certificates of deposit were taken up by the issuing bank, interest paid thereon, and new certificates issued, a new loan from the depositor to the bank was created, and a new obligation, which could not go on insolvency of the bank to increase the superadded liability, under Const. art. 12, sec. 2, of a stockholder who, before such issuance of the new certificates, had sold his stock, which had been duly evidenced by record of the transfer on the books of the bank." See, also, *Heine v. Degen*, 362 Ill. 357, 199 N. E. 832.

These and other cases support the proposition that each certificate of deposit constitutes a separate and complete transaction, and the stockholder's liability under section 7, art. XII of the Constitution, accrues thereon at the date of issuance. Any other view would be unnecessarily burdensome to bank stockholders.

"Ordinarily a receiver takes charge of banking affairs where the bank left them, and cannot generally, in absence of fraud, mistake, or violation of law, open closed transac-

tions which would conclude the bank, if solvent." *State v. South Fork State Bank,* 112 Neb. 623, 200 N. W. 349. See, also, *State v. American Exchange Bank,* 112 Neb. 834, 201 N. W. 895; *State v. Farmers State Bank,* 112 Neb. 788, 201 N. W. 899.

It seems to the court that, if a certificate of deposit is taken up, marked "Paid," and canceled, it is perfectly immaterial whether the holder thereof takes cash, which he could have demanded and been paid, or reinvests the proceeds thereof by taking a new certificate of deposit. In either event the liability under the old certificate of deposit is terminated and settled, and a new liability has been created. Finding no prejudicial error in the record, the judgment is

AFFIRMED.