E. H. LUIKART, RECEIVER, APPELLANT, V. CARL J. SCHMIDT
ET AL.: T. E. STEVENS, APPELLEE.

292 N. W. 723

FILED JUNE 14, 1940. No. 30619.

*F. C. Radke* and *O'Hanlon & O'Hanlon*, for appellant.

*Wells, Martin, Lane & Offutt*, contra.

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and ELLIS, District Judge.

JOHNSEN, J.

This case is here on motion for rehearing. Our previous opinion is reported in 136 Neb. 497, 286 N. W. 687. The question is whether we shall adhere to the rule there adopted that, in enforcing the superadded liability of a stockholder of a bank under section 7, art. XII of our Constitution, the renewal of a certificate of deposit must be regarded as extinguishing the original liability for the deposit, and as creating a new and distinct liability from the date of the renewal.

The previous opinion follows *Harrison v. Ault,* 359 Ill. 75, 194 N. E. 235, and the view there expressed that "the surrender of a certificate of deposit and the issuance of a new one is a new contract of deposit." *Fremont State Bank v. Vincent,* 112 Wash. 493, 192 Pac. 975, is to the same effect.

The opposite view is declared in *Dunn v. Bank of Union,*

74 W. Va. 594, 82 S. E. 758, where it is held that the renewal of a certificate of deposit, like the renewal of a note, is but a continuation of the debt, and that there is no extinction of the original liability, unless the parties so intend or agree. The West Virginia court says: "The certificates originally issued therefor were mere evidences of indebtedness then contracted. In other words, the certificates were, in effect, the notes of the bank, payable to each plaintiff. Although renewed by the subsequent issuance of other certificates, as previously observed, the original liability was not extinguished and a new liability created, any more than a new note pays an antecedent debt."

The view of the West Virginia court appears to have been adopted as a preferred text statement in 7 Am. Jur. 97, sec. 119, where it is said: "A subsequent renewal of bank deposit certificates is not a payment of the original indebtedness and does not operate to absolve from liability persons who were shareholders at the time the original debts were contracted, but who have since transferred their stock." It has similarly been made a text statement in 6 Zollman, Banks and Banking, 301, sec. 3997. There are other judicial expressions, in cases not involving stockholder's liability, such as *Village of Farmington v. Reisinger,* 174 Minn. 56, 218 N. W. 444, and *Barsness v. Tiegen,* 184 Minn. 188, 238 N. W. 161, which recognize that the liability for a deposit, generally speaking, is a continuing one, notwithstanding renewal certificates have been issued. Thus, in the first mentioned case, it was held: "Where a certificate of deposit is taken for village moneys deposited with a bank and such certificate is renewed from time to time, the renewal certificates, nothing else appearing, are not payment of the original deposit." The opinion declares: "The original obligation has remained from the beginning, notwithstanding the renewals of the certificates of deposit, and as a matter of law has never been discharged by payment."

While our previous opinion in this case is the first specific expression we have made upon the question, our

records show that the issue was directly raised in *Peterson v. Strayer*, 121 Neb. 587, 237 N. W. 667. The stockholders in that case contended that their liability was governed by the date that the renewal certificates were issued, and not when the deposits were originally made, while the receiver contended that the taking of a new certificate of deposit was a mere renewal of the old indebtedness and not a payment thereof, where the parties had not agreed that the original debt was to be extinguished. The opinion does not discuss this contention, but the following statement therein indicates that the court must tacitly have adopted the view for which the receiver contended: "Did the liabilities accrue during the time the Strayer group were stockholders of the bank? Clearly, this must be answered in the affirmative." The Washington and West Virginia cases, previously referred to herein, are duly cited in the briefs, and the court takes occasion to quote, though a bit obscurely, from the latter, that "the burden of showing such intention and agreement (rests) resting always upon him who claims the benefit of the discharge."

In *State v. Security State Bank*, 116 Neb. 521, 218 N. W. 405, tacit recognition also appears to have been given to the principle that the liability for a deposit depends upon and is controlled by the original transaction, when the court refused to allow a renewal certificate to be brought within the protection of the guaranty fund, because the transaction initially was not subject to such protection.

Again, investigation discloses that, in past bank receiverships, the district courts of the state, generally speaking, have enforced the liability of stockholders in accordance with the rule in the West Virginia case, especially since the reference to that case in *Peterson v. Strayer, supra*. This circumstance, of course, has no particular significance, except to suggest the trend of the judicial mind in the state, in our consideration of what appears to be the preferable rule for final adoption under all the circumstances.

But, apart from all that has been said, the rule declared in the West Virginia case seems to us the better rule in

accomplishing the purpose which the constitutional super-added liability was intended to serve. The liability obviously was designed for the fuller protection of creditors of the bank. It extends to all liabilities of the bank "accruing while he remains such stockholder." It is a plenary obligation, created by the Constitution, and there is no reason to limit its scope by unnecessary construction. If each of the two rules referred to rested on equally cogent logic, there would be no occasion to make the stockholder a favorite of the law over the depositor. Rather, the depositor should have the fullest measure of protection from the constitutional liability that it is reasonably and soundly possible to give him. To the depositor, certainly, it is pure fantasy to say that, when he renewed his certificate, the money was returned to him, and that he in turn passed it back over the counter to the bank. So far as he was concerned, there was but one controlling transaction, and that was when he parted with his money. The rest of it was incidental detail—collecting interest, and going to the bank to receive a substitute certificate or receipt, so that his interest payments would not be interrupted.

A legal fiction may be resorted to, at times, to bridge the gap of logical imperfection, but there is no necessity to tolerate it, where the stream of actuality can rationally be crossed. We do not mean to imply, of course, that, on the renewal of a certificate, the nature of the transaction may not be so changed as to create a new and different obligation. No such situation, however, is here presented. The certificate-holders in this case, upon whose deposits defendant's liability is made to depend, are not shown to have done anything in renewing their certificates, except to extend the time when they could collect their deposits, just as they would have done if they had renewed a promissory note.

It is our view, therefore, that we should adopt the rule that the mere renewal of a certificate of deposit is not a payment of the original indebtedness and will not operate to discharge the superadded liability, for such deposit, of

a stockholder of a bank, who has transferred his stock before the renewal. Our previous opinion is accordingly vacated, and the judgment of the district court is reversed and the cause remanded, with directions to enter judgment in favor of plaintiff.

FORMER OPINION VACATED AND JUDGMENT REVERSED.

ROSE, J., dissents.

PAINE, J., dissenting.

I respectfully dissent from the new opinion now adopted. It is said that the previous opinion (136 Neb. 497, 287 N. W. 687) follows two authorities. The opinion now adopted accepts the view of a West Virginia case, *Dunn v. Bank of Union*, 74 W. Va. 594, 82 S. E. 758, saying: "The rule declared in the West Virginia case seems to us the better rule in accomplishing the purpose which the constitutional superadded liability was intended to serve;" and says this West Virginia case has been adopted as a "text statement" in 7 Am. Jur. 97, sec. 119. However, in the same section the "text statement" in the second sentence below entirely supports our former opinion, and reads as follows: "On the other hand, however, it has been held that one who is a stockholder of a state bank at the time of the issuance by it of a certificate of deposit, but who disposes of his stock prior to the renewal of the certificate through the surrender of the old certificate, marking the same 'Paid,' and issuing a new certificate, cannot be held liable to the depositor as a stockholder." See *Harrison v. Ault*, 359 Ill. 75, 194 N. E. 235, 97 A. L. R. 626.

Turning to 9 C. J. S. 140, sec. 76, for the applicable text statement, we find this given as the rule: "Statutory or constitutional provisions imposing a superadded liability on all stockholders or shareholders of banks are usually held to relate to, and only to, those stockholders who are such at the time the liability accrues by reason of the failure or insolvency of the bank. Consequently, unless they have estopped themselves from denying that their ownership has continued, stockholders who have made valid and sufficient transfers of their stock prior to the failure of the

bank are generally relieved from such liability, while transferees holding the stock on the failure of the bank are subject thereto;" citing in support thereof *Bru v. White* (C. C. A. Cal.) 75 Fed. (2d) 729, and cases from Maryland, New York and Ohio,

Following this statement is one to the contrary effect, supported by *Peterson v. Strayer*, 121 Neb. 587, 237 N. W. 667 (modified on other grounds, 121 Neb. 866, 239 N. W. 213), and cases from Illinois and West Virginia.

Stevens sold his bank stock on February 6, 1924, and on June 20, 1924, the bank was taken over and being conducted "as a going concern" for more than three years, and was not declared insolvent by a decree of court until December 17, 1927.

In *Metropolitan Savings Bank & Trust Co. v. Farmers State Bank*, 20 Fed. (2d) 775 (8 C. C. A.), there is a discussion of the two options before the Department of Trade and Commerce, either to have a receiver appointed by the court, or to operate the bank as a going concern, the court saying: "The status of the banking corporation while being operated by the commission as a 'going concern' differs completely from the status of a bank in receivership. In the latter case the bank is in process of liquidation, either by judicial action or by virtue of statutory authority. In the former case the bank continues in business as usual, receiving deposits, paying checks drawn against it, making new loans, renewing old ones, assuming new liabilities, discharging old ones and in every way carrying on its business in the usual manner and with the right to do everything exactly as it could have been done before it was put under the management of the commission."

This court, in passing on the statute (since repealed), held in the case of *State v. Thurston State Bank*, 121 Neb. 407, 237 N. W. 293, the "status and priority" of creditors is "fixed" on the date of adjudication of insolvency, and not when the bank was taken over by the department.

Section 7, art. XII of the Constitution of Nebraska, as then in effect, provided: "Every stockholder in a banking

corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder." Does not the liability "accrue" when it is originally incurred by the bank, to wit, at the date of the issuance of a new certificate of deposit, or the making of a deposit, or the delivery of a note?

Remember, there is no competent evidence that this bank was insolvent when it was taken over and run as a going concern. Many such banks were turned back to their officers and stockholders.

It appears from exhibit No. 5, being the record of time certificates, that many of them were paid off during the time it was being run as a going concern.

I am still of the opinion that a bank stockholder, who sells his stock three years and ten months before the bank is declared insolvent, and all certificates of deposit in force at the time he was a stockholder have been renewed by those in charge of the bank, is thereby relieved from all liability for the outstanding certificates of deposit when the bank fails.